RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0049p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

            *Plaintiff-Appellee,*

   *v.*

No. 08-1185

MIKLOS KONTROL,

            *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Kalamazoo.
No. 00-00082-001—Paul Lewis Maloney, Chief District Judge.

Argued: January 16, 2009

Decided and Filed: February 12, 2009

Before: SUHRHEINRICH, BATCHELDER, and SUTTON, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Scott Graham, SCOTT GRAHAM PLLC, Portage, Michigan, for Appellant. Raymond E. Beckering III, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Scott Graham, SCOTT GRAHAM PLLC, Portage, Michigan, for Appellant. Raymond E. Beckering III, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

_____

**OPINION**

_____

    SUTTON, Circuit Judge. Miklos Kontrol appeals the district court's decision revoking his supervised release and imposing a 15-month prison sentence. We affirm.

I.

In September 2000, Kontrol pleaded guilty to interstate and foreign travel in aid of drug-related racketeering. *See* 18 U.S.C. § 1952(a)(3). In December 2001, the district court sentenced him to 60 months' imprisonment followed by three years of supervised release. In May 2005, Kontrol began serving his supervised-release term subject to several conditions, including a requirement that Kontrol "notify [his] probation officer 15 days prior to any change in residence or employment." JA 58; *cf.* U.S.S.G. § 5D1.3(c)(6).

For the first year of his supervised release, Kontrol did not encounter any problems. The same was not true of his second year. In connection with a business he founded, "Homemaid Fantasy," in which maids provided cleaning services in their lingerie, Kontrol created a website that offered a "members only sex club." 1st Pet. for Warrant at 4 (Dec. 7, 2006). Kontrol also had two encounters with probation staff: He confronted a case manager at a private dance club and accosted a probation officer in a grocery store. In the probation department's view, both encounters suggested that Kontrol had "anger management issues," "lack[ed] appropriate boundaries" and might have mental-health problems. *Id.* at 3. At the probation department's urging, the district court modified Kontrol's supervised-release conditions in January 2007, ordering him to seek mental-health treatment, to abandon the online-sex-club component of his Homemaid Fantasy endeavor and to perform 20 hours of community service per week whenever he was not employed full time for more than 60 days.

These new conditions did not improve Kontrol's behavior or his relationship with the probation staff over the next year. He changed his residence at least once without telling his probation officer, Rhonda Wallock, that he had moved or where he had gone. And he began refusing to answer questions in his monthly supervision reports, eventually filing an unsuccessful lawsuit to enjoin his probation officer from asking him these questions.

Kontrol also neglected to apprise Wallock of a change in his employment. At "some time" in late November 2007, JA 123, Kontrol began soliciting customers for Fresh Start Solutions, a company specializing in "foreclosure prevention services," JA 165. Fresh Start identified homeowners on the brink of foreclosure, helped them to find buyers to purchase their property and negotiated with the mortgage owners to take a loss on the loans without damaging the homeowners' credit. Kontrol's task was to visit potential clients in their

homes, persuade them to hand over their property to Fresh Start and help them to fill out the initial paperwork (which included confidential details such as social-security numbers). He earned $350 for each homeowner he brought on board.

Kontrol neglected to tell Wallock about his new employment until December 6, 2007, after he completed his first successful transaction. That day, Kontrol reported to the probation department for a regular meeting. Before he made it to Wallock's office, he got into an argument with the building security guards. When Wallock confronted him about the incident, Kontrol became irate, telling Wallock that "[she] only ha[d] the power for six more months," at which time he would "ha[ve] the power." JA 75. To another officer standing with Wallock, Kontrol said, "I know everything about [Wallock]," and added with his finger pointed at Wallock, "I know where she lives, I know she's 36, I know she's divorced, I know everything about her." JA 76. Kontrol walked out after this exchange.

At Wallock's direction, Kontrol returned on December 10 to discuss his new employment further. Wallock asked when his work for Fresh Start began, explaining that his supervised-release conditions required him to notify her of employment changes in advance. In Wallock's account, Kontrol responded: "[O]h, you want trouble, you start this. Find the needle in the haystack. You start this if you want trouble." JA 81.

On December 20, the government urged the district court to revoke Kontrol's supervised release on two grounds. It claimed that Kontrol's statements to Wallock on December 6 and 10 violated 18 U.S.C. § 111(a)(1), which proscribes "forcibly assault[ing], resist[ing], oppos[ing], imped[ing], intimidat[ing], or interfer[ing] with [a federal officer or employee] while engaged in or on account of the performance of official duties," *id.* And it claimed that Kontrol failed to comply with the supervised-release condition that required him to notify his probation officer 15 days prior to a change in employment.

After holding an evidentiary hearing, the magistrate found probable cause to revoke Kontrol's supervised release based on the employment-notification requirement. The district court, after holding a second hearing, agreed that Kontrol had violated this requirement, and revoked his supervised release. Although it noted that a within-guidelines sentence ordinarily would suffice for a failure-to-notify violation, the court concluded that Kontrol's threatening statements to Wallock made an above-guidelines sentence appropriate. It

imposed a 15-month sentence, which was above the 4–10 month advisory range but below the 24-month statutory maximum, *see* 18 U.S.C. §§ 1952(a)(A), 3559(a)(4), 3583(e)(3).

## II.

### A.

Kontrol first challenges the revocation of his supervised release, arguing that the district court erred in finding that he violated the terms of his release by failing to notify Wallock of his job with Fresh Start at least 15 days in advance. We review a district court's decision to revoke supervised release for abuse of discretion, *United States v. Cofield*, 233 F.3d 405, 406 (6th Cir. 2000), giving fresh review to its legal conclusions, *United States v. Crace*, 207 F.3d 833, 835 (6th Cir. 2000), and clear-error review to its fact findings, *United States v. Carter*, 463 F.3d 526, 528 (6th Cir. 2006).

The district court acted well within its discretion in concluding that Kontrol violated the employment-notification condition of his release. Kontrol conceded in his testimony that he worked for Fresh Start, and on appeal he acknowledges that his work amounted to at least "part-time employment," Br. at 10. And he concedes that he failed to apprise Wallock of his new job until after it began.

Kontrol nonetheless insists that he did not violate the requirement because he had a good-faith belief that he was at most a freelance independent contractor, not a Fresh Start employee, and thus had no duty to tell the probation department of his activities. Even if we assume that such a defense might work in some circumstances, it does not work here. The modified terms of Kontrol's release required him to perform regular community service when not "gainfully employed full time, *as determined by the probation officer*," Order at 1 (Jan. 31, 2007) (emphasis added), who could make that decision only based on updates provided by Kontrol. Kontrol's release conditions thus made the probation officer, not Kontrol, the judge of whether and to what extent he was employed, precluding Kontrol from reasonably concluding that he could withhold information that *he* thought irrelevant to his employment status.

Nor at any rate does it appear that Kontrol held such a belief. Keep in mind that Kontrol *did* inform Wallock of his work for Fresh Start; he simply did so late, telling her of

his new employment "as soon as [he] came to see her on [December] 6th." JA 124. That behavior itself suggests that Kontrol himself did not think his employment fell outside the scope of Wallock's supervision. The district court did not err in concluding that Kontrol violated the employment-notification provision.

B.

Kontrol next challenges his 15-month sentence. We review "[s]entences imposed following revocation of supervised release . . . under the same abuse of discretion standard that we apply to sentences imposed following conviction," *United States v. Bolds*, 511 F.3d 568, 572–73, 578 (6th Cir. 2007), which means that we may overturn a sentence only if it is procedurally or substantively unreasonable, *see United States v. Houston*, 529 F.3d 743, 753 (6th Cir. 2008).

There was nothing procedurally amiss about this sentence. The district court correctly calculated the guidelines range, treated the range as advisory, considered the § 3553(a) factors and explained the sentence it imposed.

Not so, Kontrol contends, because the district court placed great weight on "unrelated" comments he made to Wallock. Br. at 19. Yet Kontrol's threats were neither unrelated nor unproved. The statements convey Kontrol's response to his probation officer's inquiry about his delinquent employment updates, to say nothing of underscoring his difficulty with handling the supervisor-supervisee relationship. What matters, at any rate, is not whether the statements related to his underlying offense but whether they fit into the § 3553(a) equation. They did. Kontrol's threatening remarks to Wallock bear on the circumstances of the underlying offense, Kontrol's recalcitrance, the need to protect Wallock and other probation staff from Kontrol and the prospect of deterring other defendants from going down a similar path. *See* 18 U.S.C. § 3553(a)(1), (2)(A)–(C).

Nor did the district court clearly err in finding that Kontrol made the statements or that they were threatening. Two government witnesses testified about them, giving the district court an ample basis for rejecting Kontrol's contrary account. Viewed in context, the statements—"I know everything about her," JA 76, and "You start this if you want trouble," JA 81, among others—gave the district court a solid foundation for saying that they

were "unmistakabl[y]" threatening, JA 227, and that Kontrol's effort to explain them away was "incredible," JA 226.

That the statements did not rise to the level necessary to establish probable cause for "forcibl[e] . . . intimidat[ion]" and the like, 18 U.S.C. § 111(a), does not make them irrelevant. No doubt, forcible intimidation of a probation officer would have supported a 15-month prison sentence, but that hardly means run-of-the-mill intimidation does not.

Kontrol's substantive-reasonableness argument meets the same fate. Even after taking his threatening statements into account, he argues, a five-month upward variance in his sentence or, perhaps more attention getting, a 50% upward variance in his sentence was not justified. But the record establishes no cognizable basis for second guessing the district court's exercise of sentencing discretion, *see Gall v. United States*, __ U.S. __, 128 S. Ct. 586, 597 (2007), and several reasons why it deserves our respect. Failing to report new part-time employment, to be sure, often will pose little danger to the public. But when a three-time felon neglects to tell his probation officer about a job that involves obtaining social-security numbers (and other sensitive information) from individuals for what the prosecution described as a "predatory foreclosure company," JA 176, the risk of harm to the public is more acute.

Kontrol's supervised-release track record did not help matters. His unmitigated and well-documented difficulties in dealing with persons in authority (especially females) also made an upward variance appropriate. So did the court's concerns about the safety of its probation staff. Kontrol showed an inability to appreciate boundaries in dealing with staff, and his threatening statements suggested he had trouble dissociating his frustrations with probation from the individuals charged with supervising him. The need to deter Kontrol from transforming his threats into actions—and the need to deter similarly situated supervisees, lest Kontrol's example inspire others to do the same—justified an above-guidelines sentence designed to make the message sink in. *Cf. United States v. Polihonki*, 543 F.3d 318, 325–26 (6th Cir. 2008).

Kontrol, last of all, complains that the real reason behind his stiff prison sentence was not his failure to report a minor change in employment but the district court's concern about his statements to probation officers. He may be right. The district court said it would not

have varied the sentence upward but for the statements, and its discussion of the sentencing factors focused heavily on the threats. But so long as Kontrol committed the underlying violation and so long as the court's consideration of the statements fits within the § 3553(a) framework, there is nothing wrong with a district court featuring this kind of explanation in announcing its sentence. Once it correctly calculates the advisory range, a district court has broad discretion to determine what sentence will serve these statutory objectives, and that is particularly so in the discretion-filled context of supervised release.

Far from confining the evidence sentencing courts may consider, Congress has insisted that the door remain wide open: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. Sometimes this latitude benefits defendants; sometimes it does not. As the district court correctly appreciated, it had as much authority to account for Kontrol's promising conduct (of which there was little) as for his unpromising conduct (of which there was a lot), so long as that conduct related to the encompassing § 3553(a) factors. Defendants, like prosecutors, must take the bitter of open-ended sentencing with the sweet, and this case simply is one in which Kontrol's conspicuously failed rehabilitation had incarceration consequences.

III.

For these reasons, we affirm.