NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0269n.06
Filed: April 8, 2009

No. 08-3454

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| MICHAEL KIRK LEGGETT, | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before: SILER, GILMAN, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Defendant Michael K. Leggett appeals the district court's finding that he violated the terms of his supervised release by threatening a federal official, as well as the sentence imposed for that violation. We affirm.

I.

On October 11, 2007, Leggett completed a 115-month prison sentence—for one count each of bank robbery and assaulting a federal officer—and began a three-year term of supervised release. Due to his violent record in prison (which included some fifty altercations), Leggett did not qualify for halfway-house placement. Instead, prison authorities provided Leggett with a bus ticket from the prison's location in Indiana, to Cleveland, Ohio. Accordingly, on October 11, Leggett traveled to Cleveland and stayed overnight with his aunt.

The following day, Leggett met with Michael Gray, a probation officer at the United States Probation Office in Cleveland. Leggett became agitated when Gray said he could not provide Leggett with transitional housing arrangements. Gray eventually had to summon Federal Protective Services officers to remove Leggett from the building.

On October 16, Leggett returned to the probation office and met with another probation officer, Henry Serna. Because Leggett was still homeless—and, given his violent tendencies, wanted to live alone—Serna directed him to Mental Health Services for the Homeless, Inc. ("MHS"), a social agency that, Serna suggested, might be able to provide a voucher for solitary housing.

At MHS, intake counselor Tara Chamberlain informed Leggett that she could not issue a voucher before conducting MHS's standard review process. She offered to house Leggett in the shelter portion of the facility in the meantime, but Leggett refused. He instead got angry, and, according to Chamberlain, stated that he was going to physically harm Serna, claiming that Serna was trying to set him up to go back to prison. Chamberlain called the Cleveland Police Department to remove Leggett from the facility and take him to St. Vincent Charity Hospital for a psychiatric evaluation.

Leggett called Serna from St. Vincent around 1:30 p.m. on October 16, and stated that he was very upset, that he planned to return to the probation office—where "the shit's going to fly"—and that he felt that "the system" was forcing him to get a gun and rob another bank. Shortly afterward, a Dr. Matthews evaluated Leggett, and concluded that he was neither suicidal nor psychotic. Leggett did continue to make explicit threats against Serna, however, which Matthews relayed to Serna.

Later that afternoon, the district court issued a warrant for the revocation of Leggett's supervised release, based on information from Chamberlain and Matthews. United States Marshals arrested Leggett at St. Vincent, and took him to the city jail in Euclid, Ohio. That night, Leggett got into a fight with an inmate there.

On March 24, 2008, the district court held a hearing on Leggett's three alleged supervised-release violations: disorderly conduct (for his conduct after his meeting with Gray); threatening a federal official (namely, Leggett's comments to Chamberlain and Matthews allegedly threatening harm to Serna); and assault (Leggett's fight in the Euclid city jail). The court found that Leggett had committed the alleged threat and assault, but declined to find that he had engaged in disorderly conduct. The court then revoked Leggett's supervised release and sentenced him to twenty-four months' imprisonment.

This appeal followed.

II.

Leggett does not challenge the district court's determination that he committed an assault. He does contend, however, that the court erroneously determined he violated his supervised-release terms by threatening Serna. "We review a district court's decision to revoke supervised release for abuse of discretion, giving fresh review to its legal conclusions, and clear-error review to its fact findings." *United States v. Kontrol*, 554 F.3d 1089, 1091-92 (6th Cir. 2009) (internal citations omitted).

In making its determination that Leggett threatened Serna, the district court considered Chamberlain's account of Leggett's behavior and statements at MHS, including Leggett's alleged

statement that he would physically harm Serna. The court also considered Matthews' phone messages on Serna's answering machine, and Serna's own testimony about his follow-up conversation with Matthews. In addition, Serna testified about Leggett's telephone statement that he would return to the probation office, where "the shit's going to fly." This evidence amply supports the district court's determination that Leggett threatened Serna. Threatening a federal official is a Grade A violation of supervised-release terms, U.S.S.G. § 7B1.1(a)(1), for which the district court "*shall* revoke . . . supervised release." *Id*. § 7B1.3(a)(1) (emphasis added). Thus, we find no error regarding the court's revocation of Leggett's supervised release.

Leggett also challenges his sentence, which we review for reasonableness. *United States v. Bolds*, 511 F.3d 568, 575 (6th Cir. 2007). Leggett had a Criminal History Category of IV at the time of his original sentencing, so his Guidelines range for the supervised-release violation was 24-30 months' imprisonment. U.S.S.G. § 7B1.4(a)(1). Moreover, Leggett's original conviction—bank robbery—is a Class C felony, and thus he faced a statutory-maximum sentence of two years for that violation. 18 U.S.C. § 3583(e)(3). The court's imposition of a twenty-four-month prison term, therefore, was reasonable.

The district court's judgment is affirmed.