**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0332n.06

**No. 08-6405**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

GREGORY CHARLES KRUG,

    Defendant-Appellant.

            /

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

OPINION

BEFORE:    MARTIN, CLAY, and KETHLEDGE, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Gregory Krug appeals the district court's finding that he violated the conditions of his supervised release. The district court revoked Defendant's supervised release pursuant to 18 U.S.C. § 3583(e) and imposed a sentence of one year in custody. The principal violations found by the district court were based on Defendant's submission of false financial information, both in sworn legal documents and to his probation officer, as well as Defendant's failure to comply with requirements that he wear a global positioning system monitoring device. For the following reasons, the district court's revocation of supervised release is **AFFIRMED**.

## BACKGROUND

On November 4, 1999, Defendant was convicted following a jury trial of possession of an unregistered silencer in violation of 26 U.S.C. § 5861(d), shipping firearms on a common carrier

without permission in violation of 18 U.S.C. § 922(e) and § 924(a)(1) and shipping a firearm with intent to commit murder in violation of 18 U.S.C. § 924(b). The district court sentenced him to 120 months in prison followed by three years of supervised release.

Defendant began his supervised release on June 27, 2007. On April 10, 2008, the district court found that Defendant had violated the terms of his supervised release, sentenced him to time served, three months in a half-way house, and global position system ("GPS") monitoring. On July 31, 2008, the probation office recommended a new finding that Defendant had violated the terms of his supervised release. A revocation hearing was held August 11, 2008 where the district court found violations had occurred (the "August violations"). The August violations are based on three separate acts. The district court found Defendant failed to follow the instructions of his probation officer by refusing to wear the ordered GPS monitoring device, failed to wear the monitoring device as required, and refused to provide requested financial information to his probation officer. The district court held those violations in abeyance.

On October 22, 2008, the probation office again filed a petition for summons based on alleged violations of supervised release. That petition was amended on November 6, 2008 to include a violation of 18 U.S.C. § 1623, although the factual predicate was identical to the previous alleged violations. On November 5, 2008, Defendant appeared with counsel for a revocation hearing. At the hearing, Defendant waived his right to counsel, and his attorney's motion to withdraw was granted. Defendant's attorney remained as "elbow counsel" for a hearing that was adjourned to the next day. On November 6, 2008, the district court held a revocation hearing and found that all alleged violations had been committed (the "November violations"). The November violations were based on several separate allegations. The main complaint was that Defendant provided false financial information based on a bank account he had that was not disclosed. Technically, the

violations were that he submitted false financial affidavits in violation of 18 U.S.C. § 1001 and § 1623, that he submitted false financial reports, that he did not "answer truthfully" in response to inquiries from his probation officer, and that he failed to provide requested financial information to his probation officer. In addition, two more violations regarding Defendant's lack of compliance with his GPS monitoring device were found.

Defendant does not contest the violations based on his failure to wear GPS monitoring, arguing only that he is old and forgetful and that he often accidentally leaves the device in its charger when he leaves the house. He also does not contest the finding in the August violations of failure to provide financial information. His main arguments deal with the factual underpinnings of the failure to provide correct financial information that constitute the bulk of the August violations. After refusing to provide financial information to the probation officer, the district court eventually ordered Defendant's previous attorney, Douglas McAlpine, to furnish the probation officer a monthly financial affidavit for Defendant. McAlpine had a client trust that had Defendant's money and also assisted in managing Defendant's financial transactions. Through this information, the district court learned about a Wells Fargo account in the name of "Goodall W. McCollough, Jr., for Greg Krug," which was referred to at the revocation hearing as the "California account." Defendant never disclosed this account as an asset on any document filed with the court or his probation officer.

The account was created when Defendant was in jail, and currently all the money in the account comes from Social Security checks. The account also originally included proceeds from a house sale that McCollough was holding on Defendant's behalf. Defendant relied on his former attorney, McAlpine, to help manage his affairs.

Following a search of Defendant's apartment, numerous bank statements were found relating to this California account.[1] The most recent statement showed activity for Defendant under the same account number and did not mention McCollough. The district court found:

> It's very clear from the documents and from the testimony that these accounts have only the money of Mr. Krug. Mr. McCollough was following – and Mr. McAlpine – following very specific instructions of Mr. Krug on checks to be written out of this account, expenditures to be made, transfers of these funds to Mr. McAlpine, and the only way that the probation office discovered this account was finally pursuant to my August 11, 2008 order where I ordered [an] affidavit of Mr. McAlpine. Mr. McAlpine revealed for the first time that the Social Security checks are deposited in a preexisting savings account for Mr. Krug in California; that Mr. McAlpine does not control this account but the funds are dispersed to Mr. McAlpine's trust account as needed and that the savings balance in that account on August 31[, 2008] was $9,952.73.

(Nov. Hr. Tr. 102).

In choosing to revoke supervised release, the district court considered both the August and November violations and sentenced Defendant to one year in custody.

## DISCUSSION

### I.

As a preliminary matter, Defendant raises several procedural issues. First, Defendant argues that the alleged violation of 18 U.S.C. § 1623, which was added on the day of the hearing, prejudiced his defense.[2] However, the factual allegations were identical to the timely-noticed violations, and

---

[1]Some of these statements appear to be from a different account in California, not the Wells Fargo account at issue here. Defendant asserts that this other account is closed, and the government provides no evidence to the contrary.

[2]The government argues that Defendant has no grounds for appeal because he challenged only the revocation of his supervised release, not the sentence imposed. Since Defendant freely admits to multiple violations of the conditions of supervised release, the government believes that any error is harmless because "a district court need find only a single violation to revoke a criminal defendant's supervised release" *United States v. Cofield*, 233 F.3d 405, 408 (6th Cir. 2000). This argument is without merit. Defendant admits five violations: the three August violations plus continued failure to properly wear his GPS device. The August violations were held in abeyance at

the addition of § 1623 was simply adding another statute that Defendant had allegedly violated while on supervised release. As the district court properly noted: "There's no new violation. There's just an additional criminal statute that the government has added to the petition." (Nov. Hr. Tr. 3). Krug's defense to the timely brought allegations of a violation of 18 U.S.C. § 1001 was identical to a defense of an alleged violation of § 1623. *Cf. Morrissey v. Brewer*, 408 U.S. 471, 480 (1972) (noting that "the full panoply of rights due a defendant in [criminal prosecutions] does not apply to parole revocations").

Additionally, Defendant argues that he was prejudiced by the withdrawal of his counsel on November 5, 2008. We disagree. Defendant made the decision to revoke his right to counsel, and the district court specifically found that he "knowingly waived his right to counsel for purposes of this revocation proceeding." (Nov. Hr. Tr. 3). Furthermore, the court instructed Defendant's previous counsel to remain as elbow counsel, further reducing the possibility of prejudice.

## II.

On the merits, we review a district court's decision to revoke supervised release for abuse of discretion. *United States v. Kontrol*, 554 F.3d 1089, 1091 (6th Cir. 2009). The district court's legal conclusions are reviewed *de novo*, while its factual findings are reviewed for clear error. *Id.* at 1091-92.

Defendant's failure to properly report the California account in both a series of court filings and in disclosures to his probation officer led to a number of violations being found. Defendant makes three arguments as to why the finding of violations was inappropriate. First, he argues that

---

that time, and the government cannot show that the additional two GPS violations would have necessarily triggered a revocation of supervised release. Because the district court could have revoked Defendant's supervised release does not mean that it necessarily would have revoked it without making the findings it did at the November hearing.

the district court did not find the requisite intent. Second, he argues that the allegedly false statements were not actually false. Finally, he argues that the violations were only discovered on the basis of privileged material. All three arguments must fail.

The district court found that Defendant violated the terms of his supervised release by violating 18 U.S.C. § 1001 and § 1623. Defendant is correct that both statutes have a *mens rea* requirement that requires knowledge. Section 1001 punishes false statements "in any matter within the jurisdiction of the . . . judicial branch of the Government of the United States" that are made "knowingly and willfully." Section 1623 deals with false declarations "before or ancillary to any court . . . of the United States" that are made "knowingly." According to Defendant, the district court never established that the failure to disclose the California account was made "knowingly.[3]"

A district court can revoke supervised release if it finds "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). The district court may not have explicitly stated that the statements were made with the requisite *mens rea*, but such a conclusion can be readily inferred. Defendant allegedly made false statements on an indigency affidavit, a net worth statement, and numerous monthly supervision reports. The false statements primarily stemmed from the failure to disclose the California account. The district court found that Defendant "failed to respond truthfully" to the probation officer's request for financial information. The district court also noted the fact that a search of Defendant's apartment showed numerous bank statements from this account. In discussing another violation, the district court notes that Defendant had "hidden the assets in these accounts and hidden the existence of these accounts."

---

[3]Defendant also alleges that the petition for summons does not allege that he acted "knowingly and willfully," but the summons clearly states that Defendant made false statements "in violation" of the relevant statutes. Those statutes can only be violated if the Defendant acts with the necessary *mens rea*.

(Nov. Hr. Tr. 103). The use of the verb "hidden" indicates intent. Given the deferential standard of review, the district court adequately found that Defendant's violations of 18 U.S.C. § 1001 and § 1623 were done with the requisite *mens rea*.[4]

Defendant's next argument is that he did not actually make any false statements. The Monthly Supervision Report asked: "Do you have checking account(s)?" Defendant answered in the negative, but he argues that technically the California account was not his. Defendant did not have unrestricted access to the account, although he admits that the money in the account was exclusively his. Defendant argues that the probation office should have asked if Defendant had money in a bank account, not whether he had any bank accounts. According to Defendant, therefore, his statement was "literally true," and the Supreme Court has decided that a defendant cannot be convicted of perjury for an answer "that is literally true but not responsive to the question asked and arguably misleading by negative implication." *Bronston v. United States*, 409 U.S. 352, 353 (1973). First, the district court clearly found that Defendant controlled the California account, even though his name was not technically on the account. Second, any error would be harmless because the allegations against Defendant are much broader than simply denying that he had a bank account. The Petition for Summons also notes that Defendant signed a financial affidavit claiming he only had $383.50 in cash and not mentioning the California account or other assets. Defendant did not reference the bank account in a net worth affidavit submitted to the probation office on June 14, 2008. The summons alleges that the probation officer repeatedly questioned Defendant regarding his finances, and that Defendant "denied having access to or control of, any bank account." (Def.

---

[4]Defendant also argued that the district court failed to "provide any specifics as to the details on financial information to which Krug has allegedly failed to respond truthfully." (Def. Br. at 11). A review of the hearing transcript makes it apparent that the primary information the district court believed was withheld was the California account.

Rep. Br. Ex. B). Ample evidence supports a finding that Defendant purposely concealed his money in the California account, a clear violation of the terms of his supervised release.

Defendant's final argument is that the district court relied on information that should be protected by the attorney-client privilege. He argues that the district court's order requiring Defendant's previous attorney, McAlpine, to submit an affidavit about Defendant's financial situation led to the disclosure of privileged information. The district court noted at the revocation hearing that "the only way the probation office discovered th[e California account] was finally pursuant to my August 11, 2008 order where I ordered this affidavit of Mr. McAlpine." (Nov. Hr. Tr. 102).

The information requested of McAlpine was not privileged. "The privilege applies only where necessary to achieve its purpose and protects only those communications necessary to obtain legal advice." *In re Columbia/HCA Healthcare Corp.,* 293 F.3d 289, 294 (6th Cir. 2002) (citations and quotations omitted). *See also Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 383 (6th Cir. 1997) (discussion of attorney's fees was "a non-privileged, financial discussion that did not involve the seeking or provision of legal advice"); *United States v. Bartone*, 400 F.2d 459, 461 (6th Cir. 1968) (testimony by attorneys about Defendant's financial deals was not privileged because there was "no indication that any of this testimony concerned legal advice given to [Defendant]"). In this case, Defendant was merely using his attorney to help with financial management. Crucially, "the burden of establishing the existence of the privilege rests with the person asserting it." *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999). Defendant has not come forward with sufficient evidence that his conversations about financial matters with McAlpine were part of a legal relationship to receive "legal advice."

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.