UNITED STATES of America,
Plaintiff–Appellee,

v.

Rashidd DOUGLAS, Defendant–
Appellant.

No. 15–3996.

United States Court of Appeals,
Sixth Circuit.

Feb. 2, 2016.

Before: DAUGHTREY, MOORE, and STRANCH, Circuit Judges.

## OPINION

KAREN NELSON MOORE, Circuit Judge.

Defendant–Appellant Rashidd Douglas appeals from the district court's order revoking his supervised release. The district court found by a preponderance of the evidence that Douglas violated his supervised release by committing two new law violations: operating a motor vehicle while impaired ("OVI") and marijuana possession. Douglas argues that there was insufficient evidence to support the district court's findings. For the reasons discussed below, we **AFFIRM** the district court's revocation of Douglas's supervised release.

## I. BACKGROUND

In 2008, a jury convicted Douglas of one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). R. 40 (Judgment at 1) (Page ID # 182). Douglas was sentenced to 78 months of imprisonment, followed by three years of supervised release. *Id.* at 2–3 (Page ID # 183–84). Douglas began serving his period of supervised release on December 19, 2013. R. 61 (5/12/15 Violation Report at 1) (Page ID # 756).

On May 12, 2015, the U.S. Probation Office ("USPO") issued a report to the district court stating that Douglas violated the terms of his supervised release by committing new law violations. *Id.* Specifically, on April 22, 2015, Douglas was arrested in Cleveland Heights, Ohio, for OVI and several traffic infractions. *Id.* USPO

issued a supplemental information report on May 28, 2015, listing an additional violation for possession of marijuana arising out of the same incident. R. on Appeal 12–6 (Supp. Information Report at 1).

The district court held a supervised release violation hearing on August 31, 2015 to determine whether Douglas committed these new law violations. R. 81 (Violation H'rg Tr. at 6) (Page ID # 899). Officer Robert Butler of the Cleveland Heights Police Department testified for the government. *Id.* at 7 (Page ID # 900). Butler explained that on the night of April 22, 2015, "at approximately 1:36 in the morning," he witnessed a vehicle "make a wide turn off of Taylor Road," coming completely into the lane in which Butler was driving. *Id.* at 10 (Page ID # 903). Butler stopped his car and witnessed the vehicle "swerve[ ] back to the right side of the road" and continue driving. *Id.* Butler subsequently turned around, activated his lights, and "pursued th[e] vehicle." *Id.* According to Butler, the vehicle did not immediately respond to his overhead lights, and he "saw that the vehicle was weaving in an S-shaped pattern ... towards ... and away from the curb." *Id.* at 11 (Page ID # 904). Butler followed the vehicle as it made two turns "without a turn signal" and continued to weave, eventually coming to a stop. *Id.* Butler identified Douglas as the driver of the vehicle. *Id.* at 12 (Page ID # 905).

After making the stop, Butler turned on his body camera and approached Douglas. *Id.* Douglas explained that "he was trying to go around another vehicle," and thus drove into Butler's lane of traffic. *Id.* Butler testified, however, that "[t]here was no vehicle where [Douglas] was claiming there was a vehicle." *Id.* Butler further testified that Douglas's "eyes were bloodshot" and that Butler "could smell an odor

of an alcoholic beverage coming from his mouth as he spoke." *Id.* According to Butler, Douglas's "speech was mumbled" and it "was very hard for [Butler] to understand what [Douglas] was saying." *Id.* at 13 (Page ID # 906). Douglas explained to Butler that he "was coming from his mom's house," where he had left "around 12:20," although Douglas did not know the current time. *Id.*

Butler asked Douglas "to turn off his vehicle," but Douglas "activated his turn signal first" before turning off the car. *Id.* Additional patrol cars arrived, and Douglas was asked to exit his vehicle. *Id.* at 13–14 (Page ID # 906–07). According to Butler, Douglas "was very unsteady" and "very heavy-footed as he stepped." *Id.* at 14 (Page ID # 907). Butler also stated that Douglas displayed a "range of emotions very quickly" during this time, including becoming "very angry" and "very sad and emotional." *Id.* Douglas declined a field sobriety test. *Id.*

Butler placed Douglas under arrest for OVI. *Id.* at 15 (Page ID # 908). During a pat down, Butler found almost $900 in cash in Douglas's pants. *Id.* at 15, 19 (Page ID # 908, 912). A vehicle inventory search of Douglas's car uncovered "an approximate two-gram bud of suspected marijuana" in the center console. *Id.* at 15 (Page ID # 908). Additionally, officers found an unzipped suitcase in the trunk of the car that contained "marijuana residue and a bud of marijuana." *Id.* at 16 (Page ID # 909).

Douglas declined a breathalyzer test at the police station. *Id.* at 18 (Page ID # 911). Butler testified that another officer informed him that Douglas "almost tripped on the way back" from providing his fingerprints, and this was mentioned in the police report. *Id.* at 19 (Page ID # 912). Butler also explained that, at the police station, a sample of the money that Douglas had on his person was put into an

envelope and placed alongside three other envelopes containing miscellaneous items. *Id.* A drug dog then alerted to the envelope containing Douglas's money, indicating that the money had "come in contact with narcotics." *Id.* at 19–20 (Page ID # 913–14).

Defense counsel cross-examined Butler. Upon questioning, Butler clarified that although "[i]t's not clear on the video" from the stop, Douglas's walk was "heavy-footed" when he exited his vehicle, and his "steps seem[ed] more exaggerated than a normal person stepping." *Id.* at 27 (Page ID # 920). Butler explained that he characterized Douglas as "unsteady" in his police report "due to the way he was walking and what the other officer told [Butler] also in the jail where he almost tripped." *Id.* at 39 (Page ID # 932). Butler further testified that "there was a couple cell phones in the vehicle" as well as paperwork, although these items were not examined. *Id.* at 30–31 (Page ID # 923–24). Defense counsel also asked Butler "whether or not average United States currency has trace amounts of drugs and/or marijuana on it?" *Id.* at 32–33 (Page ID # 925–26). Butler responded that he "ha[s] heard that," but explained that he has "had tests where the canine has not alerted on money" and that he has used "sample money" that is no longer in circulation in order to do tests. *Id.* at 33 (Page ID # 926). Finally, Butler explained that he indicated in his police report that Douglas's "speech was good but slurred" because "there was some times where he was very hard to understand during the stop." *Id.* at 39 (Page ID # 932). Butler affirmed that he believed Douglas to be "extremely intoxicated." *Id.* at 40–41 (Page ID # 933–34).

Douglas's mother, Patricia Douglas, testified for the defense. *Id.* at 44 (Page ID # 937). Patricia explained that "[t]he ve-

hicle belongs to [her] mother," Douglas's grandmother. *Id.* at 46 (Page ID # 939). Because Douglas's grandmother does not drive, "a lot. of people have been using [her] vehicle," including Patricia's nephew. *Id.* Patricia did not know, however, whether her nephew used marijuana. *Id.* at 47 (Page ID # 940). Patricia also stated that she drives the car, *id.* at 48 (Page ID # 941), but that the marijuana does not belong to her, *id.* at 55 (Page ID # 948). Patricia testified that she did not recognize the suitcase, nor did she "recognize it being in the car." *Id.* at 48–49 (Page ID # 941–42). Finally, Patricia stated that she "know[s her] son's voice" and that "it was not slurred" on the video recording of the stop. *Id.* at 52 (Page ID # 945).

Lastly, U.S. Probation Officer Karen Ford, Douglas's supervising officer, testified. *Id.* at 57 (Page ID # 950). Ford explained that Douglas had been unemployed for "two to three months prior" to his OVI arrest. *Id.* at 58 (Page ID # 951). Although Ford did not know Douglas's income, she explained that "[h]is jobs were with temporary agencies", and that his most recent employment involved working with chemicals.. *Id.* at 58–59 (Page ID # 951–52). Ford did recall that Douglas's car was totaled in February and that "he was planning on suing," but she stated that "no settlement had occurred" when they last discussed the incident. *Id.* at 59–60 (Page ID # 952–53).

At closing, the government argued that a preponderance of the evidence supported that Douglas violated his supervised release by driving while impaired and possessing marijuana. *Id.* at 61 (Page ID # 954). Although the government "admit[ted] that when you listen to Mr. Douglas speaking on the video, his speech is not as slurred as some people might be had they been drinking, ... there are a whole lot of variables that govern how alcohol affects other individuals," and the evidence supported that Douglas was driving while impaired. *Id.* The government pointed to Butler's testimony about Douglas's driving, that Butler described Douglas as having "bloodshot eyes," smelling of alcohol, expressing "wide-ranging emotions," and that Douglas "did appear to have some difficulty in talking." *Id.* at 61–62 (Page ID # 954–55). In support of Douglas's violation for marijuana possession, the government argued that the marijuana found in the console and in the suitcase, combined with the fact that the defendant was the only person in the car with "nearly a thousand dollars" at that time of night, clearly indicated that the defendant "had just gotten done selling marijuana to somebody." *Id.* at 62–63 (Page ID # 955–56).

Defense counsel argued that, because there was an "extraordinarily weak case[ ]" against Douglas, the district court should wait for Cleveland Heights to prosecute him before making a finding regarding the new law violations. *Id.* at 64–65 (Page ID # 957–58). Defense counsel also contended that "there is nothing in th[e] video that was apparent ... that [Douglas] was clearly intoxicated" and that Douglas could not be responsible for the marijuana found in a car that was frequently driven by others, particularly where there was no proof as to whose paperwork or cellphones were in the car. *Id.* at 65–67 (Page ID # 958–60).

The district court found by a preponderance of the evidence that the defendant violated his supervised release. The district court explained that "Officer Butler was extremely well-qualified" and that he "presented testimony in a very professional fashion" and "explained in great detail what led to the stop and arrest of Mr. Douglas." *Id.* at 72 (Page ID # 965). The district court also stated that, in addition

to Butler's testimony, "[t]he body camera film is telling." *Id.* at 73 (Page ID # 966). According to the district court, "the evidence and the video show in fact Mr. Douglas was indeed impaired," and that Butler "testified to things that we could not see on the video," such as "the smell of alcohol, the bloodshot eyes, and the other activities of the defendant that could not be ascertained from strictly the camera," including at the police station. *Id.* at 73 (Page ID # 966). The district court further concluded that "it's clear the defendant had marijuana." *Id.* at 74 (Page ID # 967). As the district court explained, marijuana was found in the car and there was "no testimony that anyone else was using marijuana in the vehicle." *Id.* Moreover, the suitcase with marijuana residue indicated "marijuana trafficking and dealing," which was "corroborated by the monies that was located on the defendant" and the dog alerting on the money. *Id.* Although the district court recognized that there was an attempt to argue that the defendant might have received an insurance settlement check, thus potentially explaining the amount of cash, the court found "[t]here has been no evidence whatsoever presented in that fashion." *Id.* at 75 (Page ID # 968). The district court further noted, "as an aside," that "this type of activity is certainly not unknown to Mr. Douglas," and the district court detailed Douglas's prior criminal history relating to drug trafficking. *Id.* at 75–77 (Page ID # 968–70).

The district court then noted that the recommended range of imprisonment under the Sentencing Guidelines was "five to eleven months," based upon "a grade C violation and the offender's criminal history category of III." *Id.* at 78 (Page ID # 971). After discussing 18 U.S.C. § 3553(a)'s sentencing factors and hearing Douglas's allocution, the district court sentenced Douglas to eleven months of imprisonment, the top of the recommended Guidelines range. *Id.* at 83–89 (Page ID # 976–82). Douglas timely appealed. R. 74 (Notice of Appeal) (Page ID # 885).

## II. DISCUSSION

Douglas argues that insufficient evidence supported the district court's finding that he violated the terms of his supervised release. "We review a district court's decision to revoke supervised release for abuse of discretion." *United States v. Kontrol,* 554 F.3d 1089, 1091 (6th Cir. 2009). We review the district court's legal conclusions de novo and factual findings for clear error. *Id.* at 1091–92.

█ The district court did not abuse its discretion in revoking Douglas's supervised release. Under 18 U.S.C. § 3583(e)(3), a district court may "revoke a term of supervised release . . . if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release." Here, the district court found by a preponderance of the evidence that Douglas violated the terms of his release by driving while impaired and possessing marijuana. Sufficient evidence supports each of these findings.

█ First, sufficient evidence supports the district court's finding that Douglas drove while impaired. Douglas contends that "the only evidence of intoxication [was] Officer Butler's observations," which were "contradictory." Appellant Br. at 12. According to Douglas, Butler "acknowledged the video footage did not clearly show Mr. Douglas rocking or being unsteady while exiting his car" and the government "conceded" during its closing argument that Douglas's "speech [was] not as slurred as some people might be had

they been drinking." *Id.* at 11. We do not find these arguments persuasive. We "defer[ ] to the district court on credibility determinations unless they are without foundation." *United States v. Angel,* 355 F.3d 462, 474 (6th Cir.2004) (internal quotation marks omitted). Here, the district court found that "Butler was extremely well-qualified" and credible; Douglas has not demonstrated that this finding lacks foundation. R. 81 (Violation H'rg Tr. at 72–73) (Page ID # 965–66). Butler testified that Douglas walked in a "heavy-footed" manner such that his "steps seem[ed] more exaggerated than a normal person stepping," even though this manner of walking did not clearly come across in the body camera footage. *Id.* at 27 (Page ID # 920). Butler further explained that although Douglas's speech was occasionally clear, at other times he was "very hard to understand." *Id.* at 39 (Page ID # 932). In addition to describing Douglas's manner of speaking and walking, Butler testified that Douglas was driving in the wrong lane and swerving his vehicle, that his eyes were bloodshot, that he displayed a "quick range of emotions," and that his breath smelled of alcohol. *See id.* at 10–14 (Page ID # 903–07). Based on the body camera film and Butler's testimony about the "activities of the defendant that could not be ascertained from strictly the camera," the district court found that "the evidence [was] somewhat overwhelming to establish" that Douglas was "driving impaired." *Id.* at 73 (Page ID # 966). Douglas has not demonstrated that the district court committed clear error in making these factual findings, and accordingly the district court did not err in finding by a preponderance of the evidence that Douglas operated a motor vehicle while impaired.

■ Second, the district court did not err in determining that a preponderance of the evidence supported a finding that Douglas possessed marijuana. Douglas argues that Butler "did not know if the car belonged to Mr. Douglas." Appellant Br. at 13. Douglas further contends that "[t]he evidence reflected many people aside from Mr. Douglas had access to the car" and that the "car contained paperwork that did not belong to Mr. Douglas." *Id.* These arguments are unavailing. Although "[t]he mere fact that [Douglas] was driving the car in which" marijuana was found is insufficient to find beyond a reasonable doubt that Douglas possessed marijuana, *see United States v. Bailey,* 553 F.3d 940, 947 (6th Cir.2009), the district court needed to determine possession by only a preponderance of the evidence, and additional facts beyond Douglas's proximity to the marijuana push the evidence past this hurdle. As discussed above, Butler found nearly $900 in cash in Douglas's pants pocket, and Butler testified that a drug dog alerted to the money. R. 81 (Violation H'rg Tr. at 19–20) (Page ID # 913–14). Butler explained the method that he used to test Douglas's money as well as the controls used to conduct drug-dog tests generally; the district court credited this testimony. *Id.* at 74 (Page ID # 967). The district court did not find persuasive defense counsel's argument that Douglas had the cash because of an insurance check, reasonably finding that no testimony supported this assertion. *Id.* at 75 (Page ID # 968). Douglas has not established that these factual findings, made by a preponderance of the evidence, were clearly erroneous. Further, despite Douglas's argument that the cellphones and paperwork belonged to another individual—implying that someone else owned the marijuana as well—defense counsel admitted during closing argument that he did not know who owned the paperwork or cellphones, including whether the items belonged to Douglas himself. *Id.* at 66–67 (Page ID # 959–60). Douglas also con-

tends that he "was drug tested following his arrest, and those results were also negative." Appellant Br. at 14. But as the government addresses, Douglas has not been charged with using marijuana, and his clean drug tests do not contradict a charge of being in *possession* of marijuana. *See* Appellee Br. at 23–24. Accordingly, the district court did not err in finding by a preponderance of the evidence that Douglas possessed marijuana and thus did not abuse its discretion in revoking Douglas's supervised release.

 Finally, Douglas emphasizes that he has not yet been prosecuted by Cleveland Heights. According to Douglas, the district court should have waited for his state-level prosecution, and this "further supports that the district court erred by finding a violation without sufficient evidence." Appellant Br. at 17. But as Douglas himself acknowledges, "the district court was not required to wait for the state-level disposition." *Id.* Indeed, as the government observes, a district court may "find that the defendant has violated a condition of his supervised release based on [the district court's] own finding of new criminal conduct even if (1) the [defendant] is later acquitted of all charges arising from the same conduct, (2) all criminal charges arising from the same conduct are dismissed prior to trial, or (3) the [defendant's] criminal conviction is subsequently overturned." *United States v. Stephenson,* 928 F.2d 728, 732 (6th Cir.1991) (internal quotation marks omitted); *see also* Appellee Br. at 25. Here, the district court heard testimony and determined that a preponderance of the evidence supported a finding that Douglas committed the two new law violations at issue. As discussed above, Douglas has not established that the district court's factual findings were clearly erroneous, and the district court

did not abuse its discretion in revoking Douglas's supervised release.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.