NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0172n.06

No. 23-2022

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|                                   |   |                                         |
|-----------------------------------|---|-----------------------------------------|
| UNITED STATES OF AMERICA,         | ) | <div style="border:1px solid">**FILED**<br>Apr 19, 2024<br>KELLY L. STEPHENS, Clerk</div> |
|    Plaintiff-Appellee, | ) |                                     |
|                                   | ) |                                         |
|                                   | ) | ON APPEAL FROM THE UNITED               |
| v.                                | ) | STATES DISTRICT COURT FOR               |
|                                   | ) | THE WESTERN DISTRICT OF                 |
| CARY LEE FIELD,                   | ) | MICHIGAN                                |
|                                   | ) |                                         |
|    Defendant-Appellant. | ) |                                    |
|                                   | ) | OPINION                                 |

Before: BOGGS, KETHLEDGE, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. A residential reentry center discharged Cary Field from its facility for using drugs. The district court found that this discharge violated a condition of Field's supervised release and sent him back to prison. Field appeals that finding. We affirm.

In 2010, Field tried to coax a 15-year-old girl into having sex during a phone call he made from Petoskey, Michigan. He pleaded guilty to enticing a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b). The district court sentenced him to ten years in prison and five years of supervised release.

In late 2021, the Bureau of Prisons allowed Field to serve the rest of his prison term at a residential reentry center in Grand Rapids. But the center's staff found him "stumbling, slurring words, and talking to" himself. Tr., R.76, PageID 268. Field later tested positive for synthetic marijuana. The center discharged him. So Field returned to prison for a few more months.

The Bureau of Prisons ultimately released Field in December 2021. Since then, he has repeatedly violated the conditions of his supervised release. His first violation occurred within months. He drank alcohol, smoked marijuana, and left the Western District of Michigan without permission. As a result, Field agreed to an order that modified his supervised-release conditions by adding a 120-day stint in jail.

But Field failed to report to jail at the designated time. For this violation, the district court revoked his supervised release. It sentenced him to an additional eighteen months in prison and five years of supervised release.

In late August 2023, Field returned to supervised release. His revised conditions required him to stay at a residential reentry center for four months. He lasted less than two. On his release, Field returned to the same reentry center that had removed him previously. That September, a staff member heard Field "stumbling around" in the bathroom, apparently "under the influence" of an intoxicant. *Id.*, PageID 266. Field ignored this employee's command to come out of the bathroom, slammed the bathroom door, and flushed something down the toilet. Around the same time, one of Field's roommates asked to move out of their room because the roommate did not "want to be part of what [the others] were doing": smoking synthetic marijuana. *Id.*, PageID 274.

On October 14, another employee at the center found Field in an "incoherent" state. *Id.*, PageID 251. The employee called 911. Paramedics opined that Field was "under the influence" of drugs, and Field refused to go to the hospital. *Id.* The employee required Field to take a drug test but did not learn of the results.

Two days later, this employee searched Field's room. He found a "homemade pipe" with "residue" in it hidden in a ceiling tile above Field's bed. *Id.*, PageID 254. He also found generic Viagra nearby. Field, a convicted sex offender, did not have a prescription to possess this drug.

Field visited the center's nurse the day after this search. At Field's request, the nurse wrote a letter "[t]o whom it may concern" noting that he had an "acoustic neuroma," a tumor that can cause dizziness. *Id.*, PageID 277. She diagnosed him with this condition based on his medical records alone. She had not seen him on October 14 and did not know whether his seemingly intoxicated condition had resulted from his drug use or from the alleged acoustic neuroma.

The center again discharged Field for flouting its rules. Field's probation officer charged him with violating the supervised-release condition that required him to stay at the center for four months. Field contested this charge on the ground that he had not used drugs during the two encounters with the center's staff. But the district court held that this argument misunderstood the nature of the charge. The court reasoned that Field automatically violated this supervised-release condition based on the center's decision to discharge him—even if it had done so for a "bogus" reason. *Id.*, PageID 244. Still, the validity of the discharge could affect the proper remedy. So the court heard testimony from three of the center's employees.

After this testimony, the court found that the government had proved the supervised-release violation because the "parties stipulate[d]" that the center had discharged Field for failing to follow its rules. *Id.*, PageID 290. It next found that the government had proved "by a preponderance of the evidence" that Field had been on drugs during the events that led the center to discharge him. *Id.*, PageID 291. Based on that conclusion, the court sentenced Field to one more year in prison and four more years of supervised release.

Field raises a single argument on appeal. A district court must abide by minimum due-process protections when deciding whether a defendant violated a condition of supervised release. *See United States v. Morrow*, 785 F. App'x 335, 337 (6th Cir. 2019); *see also Morrissey v. Brewer*,

3

408 U.S. 471, 488–89 (1972).  Field claims that the district court violated due process here.  How?  The government allegedly lacked enough evidence to prove that he used drugs at the reentry center.

This argument fails for two reasons.  *First*, Field mischaracterizes the supervised-release violation.  The court did not find that Field violated a condition barring him from *using drugs* (conduct that qualifies as a more serious "Grade B" violation).  Tr., R.76, PageID 290.  It found that Field's discharge from the center violated the condition requiring him to *stay there* for four months (conduct that qualifies as a less serious "Grade C" violation).  *Id.*; *see also* U.S.S.G. §§ 7B1.1(a)(2)–(3), 7B1.3(a)(1)–(2).  And plenty of evidence showed that the center had discharged Field.  Indeed, he conceded the point.  His counsel "stipulate[d] that [he had] been discharged from" the center.  Tr., R.76, PageID 246–47.  As the district court saw things, that admission *alone* proved this violation.  It reasoned that Field did not get to "relitigate" the center's underlying reasons for the discharge—just as "[y]ou don't get to relitigate your teacher's grades each time they fail you."  *Id.*, PageID 291.  Field does not dispute the district court's conclusion that his discharge automatically showed a supervised-release violation.  We thus need not address the conclusion on appeal.  And because it independently justified the court's finding of a violation, we likely could affirm on this basis alone.  *See United States v. Sharp*, 2023 WL 3966739, at *4 (6th Cir. June 13, 2023); *City of Taylor Gen. Emps. Ret. Sys. v. Astec Indus.*, 29 F.4th 802, 815 (6th Cir. 2022).

*Second*, and regardless, enough evidence supported the district court's alternative finding that Field had used drugs on the two occasions that the reentry center alleged.  We review the district court's factual findings for clear error.  *See United States v. Hughes*, 604 F. App'x 448, 452 (6th Cir. 2015); *United States v. Kontrol*, 554 F.3d 1089, 1092 (6th Cir. 2009).  Under that "deferential" standard, we must uphold a finding as long as the evidence rendered it "plausible"

on the record as a whole. *United States v. Caston*, 851 F. App'x 557, 560 (6th Cir. 2021) (citation omitted). The evidence of Field's drug use met this low bar. Staff members twice found him in an intoxicated state. The first time, he disobeyed a staff member's commands and flushed something (likely contraband) down the toilet. The second time, a staff member discovered a used pipe with residue hidden near his bed. One of his roommates also told staff members that Field had smoked marijuana in the room. Back in 2021, moreover, the center had discharged him after he had failed a drug test.

Field responds that the government could have presented more evidence. For example, it could have produced the results of the drug test that he took after the October 2023 incident. And it could have checked the pipe found near his bed for fingerprints. But he cites no case that requires this demanding level of proof in supervised-release proceedings. *Cf. Morrow*, 785 F. App'x at 340. That is unsurprising. In those proceedings, district courts may find facts under a lower "preponderance of the evidence" standard and need not follow the Federal Rules of Evidence. 18 U.S.C. § 3583(e)(3); Fed. R. Evid. 1101(d)(3).

Field next relies on the nurse's letter to offer an alternative reason for his apparent intoxication: his acoustic neuroma. This letter might have allowed the district court to find that Field had not used drugs. But when "conflicting evidence" reasonably permits a district court to choose either of two opposing factual findings, "an appellate court must respect its choice" between the two under the clear-error standard. *Caston*, 851 F. App'x at 560. We see no clear error here and thus must respect the court's finding that Field's drug use (not his tumor) caused his intoxicated state.

We affirm.