**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0692n.06
Filed: November 13, 2008

**No. 07-1796**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| DEON ANTONIO THOMPSON, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before: MARTIN, DAUGHTREY, and KETHLEDGE, Circuit Judges.

**PER CURIAM.** The defendant, Deon Antonio Thompson, appeals the district court's revocation of supervised release, contending that the evidence relied upon by the court was insufficient to support revocation. We find no error and affirm.

The defendant was originally sentenced in February 1997, to a term of 80 months in prison, to be followed by a 60-month supervised release period, which he began serving in April 2003. In September 2006, officers from the Detroit Police Department arrested the defendant for felony firearms possession. The arrest occurred in a residence located at 437 Jefferson Court, Detroit, Michigan. Both the police investigation report and the arresting officer's testimony at the defendant's state court trial indicated that, as police

entered the residence, Thompson was either in or near the northeast bedroom. A search of that room revealed two loaded handguns, one on top of a dresser and the other inside a closet. According to the trial court testimony, officers recovered United States mail bearing the defendant's name from the same dresser top as one of the guns. According to the investigation report, Thompson admitted to police that he resided at the address.

Thompson was tried to the bench in state court and, at the conclusion of the prosecution's case, the trial judge granted his motion for a directed verdict, ruling that the state had failed to establish the element of possession beyond a reasonable doubt. In a subsequent opinion entitled "reason for dismissal," the trial judge summarized the testimony presented by the prosecution and stated the reasons for dismissal, finding that because no witness testified that the defendant was inside the bedroom when the weapon was recovered, and because a third-party was seen in proximity to the bedroom at the time, the state had not sufficiently established that the gun was the defendant's. Further, the judge ruled that the presence of the defendant's "junk mail" on the dresser was not enough to establish proof of residency and referred to the 25 caliber gun found on the dresser as a "chick" gun (i.e., a gun that a woman would own).

Despite the defendant's acquittal on the state charge, the probation department sought revocation of the defendant's supervised release based upon these same facts. At the supervised release revocation hearing, the prosecution introduced both the investigation report and the testimony summarized in the state court's opinion without

objection. Probation Officer Timothy Genyk further testified that the probation department's request for revocation was based upon the investigation report and that neither Genyk nor other members of the department conducted any independent investigation.

Thompson and his girlfriend, Charlene Clark, testified for the defense. Clark admitted to being the person seen in proximity to the northeast bedroom immediately before the police entered the home; disclaimed ownership of the guns; and denied that there had ever been a gun on the dresser at all. In his testimony, Thompson initially denied any connection to the 437 Jefferson Court residence, other than visiting the house on a few occasions. Later, however, Thompson admitted that he received mail, including employment checks, at the address. He also insisted that the mail found by police had not been seized from the dresser top but had, instead, been removed from his pockets.

Following the revocation hearing, the district court entered an order revoking Deon Thompson's supervised release. Relying on the investigation report, the summary of the officers' trial testimony, and the incredibility of the defendant's testimony, the district court found by "at least a preponderance of the evidence that the defendant did possess a firearm at the Jefferson House." The court also found the defendant guilty of the three other supervised release violations and sentenced him to 36 months' imprisonment.[1]

---

[1] The district court found four violations of the conditions for supervised release; it found that (1) Thompson committed the crime of felony firearms possession; (2) he did not report to probation as required; (3) he failed to notify the probation department of a change in residence; and (4) he failed to notify the probation department of his arrest in a timely manner. The defendant was acquitted of a fifth charge alleging that he did not

On appeal, Thompson challenges only the determination that he committed a new crime while on supervised release. He raises no challenge to the other findings of guilt or to the reasonableness of his sentence.

We review a district court's revocation of supervised release for an abuse of discretion. See United States v. Kirby, 418 F.3d 621, 626 (6th Cir. 2005). To reverse the lower court's revocation order, we must have a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." United States v. Stephenson, 928 F.2d 728, 732 (6th Cir. 1991) (quoting Balani v. INS, 669 F.2d 1157, 1160 (6th Cir. 1982)).

The district court may revoke a term of supervised release if it finds "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3); see also United States v. Webb, 30 F.3d 687, 688-689 (6th Cir. 1994). The preponderance standard requires a lesser quantum of proof and enables the trier of fact to make a determination of guilt that it could not make if the standard were that at trial, i.e., guilt beyond a reasonable doubt. See In re Winship, 397 U.S. 358, 368 (1970). Moreover, "revocation hearings are more flexible" than criminal trials. Stephenson, 928 F.2d at 732. As a result, the district court may rely upon "reasonably reliable evidence," including hearsay. Id.

---

maintain consistent employment.

The defendant asserts on appeal that the evidence presented at the revocation hearing was insufficiently reliable to support the finding that he committed a new criminal offense. The defendant's primary argument is that the district court erred by basing its finding solely on the probation officer's testimony summarizing the original Detroit police investigation report. Relying upon Kirby and Stephenson, the defendant argues that because the probation officer lacked personal knowledge about the events described in the report, because he failed to conduct an independent investigation into those events, and because he was newly assigned to the defendant's case, his testimony provided an insufficient basis for the court's finding.

In Kirby, we upheld the district court's revocation of supervised release where the evidence consisted of just one probation officer's testimony. See 418 F.3d at 626. However, we emphasized in that case that the officer had personally reviewed surveillance tapes showing the defendant committing the crime at issue and had also spoken with the investigating police officers. See id. In Stephenson, we reversed the district court's revocation of the defendant's supervised release, noting that the probation officer's testimony was "meager" and contained "very few facts" concerning the allegations in dispute. See 928 F.2d at 731. There, the only evidence supporting the court's finding that Stephenson committed a new assault was the probation officer's testimony that the defendant had been arrested and the defendant's admission that "[t]here was some pushing in there." Id.

In this case, the defendant cites these precedents for the proposition that in a revocation proceeding, a probation officer's testimony about the defendant's new crimes must be based upon the officer's own thorough and independent investigation of the allegations. In the alternative, suggests the defendant, a witness with personal knowledge must submit an affidavit or offer live testimony at the revocation proceeding. This proposition, however, is plainly not consonant with the cases cited to support it. Rather, the thoroughness of the testifying witness's own investigation or the extent of his personal knowledge are simply factors to be weighed by the district judge. See Kirby, 418 F.3d at 626-27 (discussing importance of "indicia of reliability"). Clearly, Kirby did not establish an independent investigation requirement for supervised release revocation cases. Similarly, in Stephenson, we explained that our concern was "not with the nature of the evidence considered but with the paucity of reliable evidence." 928 F.2d at 732 (internal quotations omitted). Contrary to the defendant's implicit suggestion, therefore, a witness need not have firsthand knowledge of the underlying facts in order to testify competently at a revocation hearing. See id. at 732 (permitting use of hearsay evidence).

We conclude that the district court's decision in this case was, in fact, based on sufficiently reliable evidence. Despite the defendant's claims to the contrary, the district court did not base its findings solely on the investigator's report or the probation officer's summary of its contents. In addition to the report, the district court cited the summarized testimony of three police officers at the state court proceeding and the "increasingly incredible" testimony offered by the defendant at the revocation hearing as reasons for its

finding. The police officers' testimony, as summarized in the state court's opinion, linked the defendant to the guns and to the places in which they were discovered. Moreover, the defendant offered testimony that was at times both inconsistent and detrimental to his case. For example, the defendant claimed that he had been to the 437 Jefferson Court residence only "a couple of times," but he later admitted that he received important mail, including his paychecks, at the residence. The district court appropriately weighed this testimony in determining that the defendant's testimony was not credible. Of course, false testimony may be considered "affirmative evidence of guilt" by the trier of fact. Wright v. West, 505 U.S. 277, 296 (1992) (plurality opinion by Thomas, J.); see also Dyer v. Macdougal, 201 F.2d 265, 269 (2nd Cir. 1952) (L. Hand, J.) ("[T]here is no alternative but to assume the truth of what [a fabricating witness] denies"). Furthermore, the report itself offered a detailed account of the events and alone would have been sufficient evidence for the court's finding. As the district court noted:

> [T]he Investigator's Report reflects, (a) Defendant admitted he resided at 437 Jefferson Ct., Detroit, Michigan (the "Jefferson house"), where the guns were found, (b) mail at the house was addressed to Defendant at the Jefferson house address, and (c) the guns were found in the Northeast bedroom where the police found Defendant.

Neither the police report nor the summarized trial testimony lacks the indicia of reliability found to be so essential in Kirby and in similar cases decided by this court. See e.g. United States v. Lowenstein, 108 F.3d 80, 83-84 (6th Cir. 1997). Nor does the evidence relied upon raise the concerns cited in Stephenson, in which barely any evidence

of guilt was presented. Here, the evidence provided a factual basis both for the probation officer's testimony and for the court's finding that the defendant violated the supervised release conditions by committing a new offense. The district court's reasonably-derived factual determinations are entitled to deference. The defendant has not made a showing sufficient to support a "definite and firm conviction that the court below committed a clear error." Therefore, we conclude that the district court did not abuse its discretion, and its judgment must be upheld.

AFFIRMED.