NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0461n.06

Case No. 23-3611

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Nov 03, 2023

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| BRIAN CALUYA aka Bryan Caluya, | ) | OHIO |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: SUTTON, Chief Judge; STRANCH and MATHIS, Circuit Judges.

**MATHIS, Circuit Judge.** Brian Caluya appeals the revocation of his supervised release. For the reasons below, we affirm.

## I.

In 2020, Caluya pleaded guilty to illegally possessing a firearm in violation of 18 U.S.C. § 922(g)(9). The district court sentenced Caluya to 33 months' imprisonment, followed by a three-year term of supervised release.

In December 2022, while on supervised release, Caluya was involved in an automobile accident in his 2020 Chevrolet Equinox and fled the scene. Shortly after the accident, officers found a plastic bag in the vehicle that they initially believed contained crack cocaine and marijuana. Officers also located Caluya's cellphone and state-issued identification inside the vehicle. Caluya admitted to the officers, as well as to the district court in his pro se "Motion for

Early Termination of Supervised Release," that he was the driver of the crashed Equinox. R. 47, PageID 289–90; R. 41, PageID 248–49. In February 2023, a state grand jury indicted Caluya for drug possession and failure to stop after an accident for the December 2022 incident.

On June 29, 2023, the United States Probation Office provided the district court with a report of noncompliance, which alleged four violations of Caluya's supervised release. The violations were: (1) a new law violation predicated on the grand jury indictment for drug possession and failure to stop after an accident; (2) non-compliance with substance abuse treatment based on Caluya's failure to attend group counseling on June 6 and 13, 2023; (3) unauthorized use of drugs based on Caluya's positive drug tests in December 2022, February 2023, and June 2023; and (4) failure to report for drug testing in May and June 2023.

At Caluya's supervised release revocation hearing, the parties were provided with copies of two police reports and a lab report related to the new law violation before the hearing began. Caluya admitted violations three and four but denied violations one and two. For the new law violation, Caluya initially asked the court to hold the matter in abeyance pending the state trial that was set to begin the following Monday, which the court denied. For violation two, Caluya conceded that he did not attend group substance abuse treatment sessions but claimed that he was excused from attending. Caluya does not challenge the court's finding as to violations two, three, or four on appeal.

The government called probation officer Candice Bryant as its only witness. Officer Bryant began supervising Caluya's supervised release in January 2023. Officer Bryant testified that she learned about Caluya's new law violation at that time, and she recounted the information in the two police reports and the lab report. According to the police reports, Caluya admitted to driving the Equinox but explained to police that he fled because he believed the other vehicles

involved in the accident were following him, which made him feel unsafe following the shooting death of a friend. The lab report revealed that the substance officers found in the plastic bag in Caluya's vehicle tested positive for heroin and fentanyl.

Caluya's attorney objected to the admission of the reports and to Officer Bryant's testimony on the ground that she did not have personal knowledge of the events surrounding the new law violation. The district court overruled the objection and indicated that it would grant Caluya a continuance if needed to call more witnesses.

During cross-examination, Officer Bryant testified that she received the reports from someone with the Cleveland Police Department, that she did not talk to anyone involved with the December 2022 incident, and that she had no personal knowledge about the events. Caluya did not call any witnesses.

Relying on Officer Bryant's testimony, the police and lab reports, and the admissions in Caluya's pro se motion, the district court found by a preponderance of the evidence that Caluya committed all four violations. The court revoked Caluya's supervised release and imposed a below-Guidelines sentence of five months' imprisonment to be followed by two years of supervised release. Caluya's timely appeal followed.

## II.

We review a district court's revocation of supervised release for an abuse of discretion. *See United States v. Givens*, 786 F.3d 470, 471 (6th Cir. 2015). In doing so, we give "fresh review to its legal conclusions and clear-error review to its fact findings." *United States v. Kontrol*, 554 F.3d 1089, 1091–92 (6th Cir. 2009) (citations omitted). To reverse a district court's revocation decision, we must have "a 'definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *United*

*States v. Stephenson*, 928 F.2d 728, 732 (6th Cir. 1991) (quoting *Taylor v. U.S. Parole Comm'n*, 734 F.2d 1152, 1195 (6th Cir. 1984)).

### III.

On appeal, Caluya argues that the district court erred in finding that he violated the terms of his supervised release because it relied solely on Officer Bryant's hearsay testimony, which Caluya claims was unreliable, without specifically finding that the interest of justice did not require additional witnesses. *See* FED. R. CRIM. P. 32.1(b)(2)(C). Caluya also contends that the evidence was insufficient to support the revocation of his supervised release. We address each argument in turn.

### A.

We first consider whether the district court, in revoking Caluya's supervised release, properly relied on the police and lab reports that Officer Bryant referenced in her testimony. In considering this issue, we must remember that: (1) a revocation hearing is "more flexible than a criminal trial," and (2) a district court may consider any relevant evidence during a revocation hearing, including "hearsay if it is proven to be reliable." *Stephenson*, 928 F.2d at 732 (citing *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972); *Taylor*, 734 F.2d at 1155); *see United States v. Lewis*, 790 F. App'x 702, 707 (6th Cir. 2019). Though flexible, a revocation hearing still must satisfy certain minimal procedural requirements. Pertinent here, under Federal Rule of Criminal Procedure 32.1(b)(2)(C), a defendant has "an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear[.]" That said, neither the Confrontation Clause nor the Federal Rules of Evidence apply in revocation hearings. *See United States v. Kirby*, 418 F.3d 621, 627–28 (6th Cir. 2005); FED. R. EVID. 1101(d)(3).

Reliable hearsay evidence includes that which is "given under oath, replete with detail, or supported by corroborating evidence[.]" *United States v. Kokoski*, 435 F. App'x 472, 474–75 (6th Cir. 2011) (citations omitted). "Conversely, out-of-court statements reflecting an adversarial relationship with the accused, or containing multiple layers of hearsay, have been recognized as unreliable." *Id.* at 475 (citations omitted). Hearsay corroborated by the defendant himself may be deemed reliable and admissible. *See, e.g.*, *id.* (citing *Crawford v. Jackson*, 323 F.3d 123, 130 (D.C. Cir. 2003), for the proposition that "hearsay is reliable and admissible at a revocation hearing when corroborated by the defendant's own statements").

Under the circumstances, Officer Bryant's testimony and the police and lab reports constituted reliable hearsay evidence. That evidence arose from a December 2022 automobile accident involving Caluya where officers located drugs in Caluya's Chevrolet Equinox after he fled the scene. In his pro se motion for termination of supervised release, Caluya admitted his involvement in the accident and further admitted he crashed his Equinox and fled the scene. Thus, Caluya corroborated the hearsay testimony, giving it additional indicia of reliability. As the district court observed, Caluya "mention[ed] [the] crash in the very car that you now say . . . is yours and that you're without it for some reason, but the drugs in it weren't yours." There was no evidence that the drugs found in the Equinox belonged to anyone other than its owner (Caluya), and Caluya's argument that the people allegedly threatening his life may have planted the drugs remains unsubstantiated.

Even though Officer Bryant's testimony was "given under oath, replete with detail, [and] supported by corroborating evidence," *Kokoski*, 435 F. App'x at 474–75, Caluya argues it was unreliable because Officer Bryant merely summarized police reports that contained "multiple layers of hearsay." Furthermore, Caluya claims the district court should not have relied on Officer

Bryant's testimony because she testified that she had not spoken with anyone involved with the alleged offense, had not conducted her own investigation, and had no personal knowledge of the events that occurred. Caluya relies on our decisions in *Taylor* and *Kirby* to support his arguments. But these cases do not help him.

In *Taylor*, we held that the district court abused its discretion in finding the defendant had committed new criminal conduct based *entirely* on the probation officer's summary of an arrest report. 734 F.2d at 1155–56. On the other hand, we held in *Kirby* that the district court did not abuse its discretion by relying solely on the probation officer's testimony in determining that the defendant engaged in new criminal conduct because the officer "undertook an independent investigation of the alleged criminal conduct rather than simply relating the contents of an arrest report." 418 F.3d at 626–27. Unlike in *Taylor*, the district court did not base its revocation decision solely on Officer Bryant's summary of the police and lab reports. And although Officer Bryant did not conduct an independent investigation like the probation officer in *Kirby*, such an investigation was unnecessary based on Caluya's admissions in his pro se motion.

Moreover, "there is no 'independent investigation requirement for supervised release revocation cases,' and 'a witness need not have firsthand knowledge of the underlying facts in order to testify competently at a revocation hearing.'" *United States v. Shakir*, 574 F. App'x 712, 714 (6th Cir. 2014) (per curiam) (quoting *United States v. Thompson*, 314 F. App'x 797, 800 (6th Cir. 2008)). In *Shakir*, we held that because the probation officer based her testimony on an arrest warrant that "contained a detailed account of the underlying events, including the date, time, and place" of a drug sale—details which the defendant did not dispute—the evidence was sufficient to support the district court's finding that the defendant violated his supervised release. *Id.* The same is true here.

Caluya also argues that the district court was required to make an express finding that the interest of justice did not require the government to call witnesses adverse to Caluya. According to the Advisory Committee Notes to the 2002 Amendments to Rule 32.1, "[t]he court is to balance the person's interest in the constitutionally guaranteed right to confrontation against the government's good cause for denying it." But we have never required district courts to conduct this balancing test on the record. *See, e.g.*, *Kokoski*, 435 F. App'x at 475 (noting that "[t]here is some question whether a district court's reliability finding must satisfy a procedural requirement as well, namely that the court expressly balance on the record the government's interest in relying upon the hearsay . . . against [the defendant's] interest in confrontation"); *United States v. Coleman*, 570 F. App'x 438, 440–41 (6th Cir. 2014) (reiterating the observation in *Kokoski* "that there is some question as to whether such *express* balancing is required" (internal quotation marks removed)). Based on the district court's statements during the revocation hearing, the court believed that good cause existed to deny Caluya's desire to confront adverse witnesses.

**B.**

Caluya argues that the district court abused its discretion because the evidence was insufficient to support the district court's finding that he violated his supervised release by committing the new law violation. We disagree. Under 18 U.S.C. § 3583(e)(3), the district court may revoke a term of supervised release if it finds "by a preponderance of the evidence that the defendant violated a condition of supervised release[.]" *See Givens*, 786 F.3d at 471. Caluya claims that the district court relied solely on unreliable hearsay, but he is mistaken. The police reports, as well as the admissions by Caluya in his pro se motion and by his attorney at the revocation hearing, established that he was the owner and driver of the crashed Equinox, that he fled the scene, and that there were drugs in his car. The police reports also indicated that officers

located Caluya's identification card and cellphone inside the vehicle, and the reports detailed an interview officers conducted of Caluya during which he admitted to driving the vehicle.

Based on the evidence admitted at the revocation hearing, the district court did not abuse its discretion in finding that Caluya violated the terms of his supervised release.

## IV.

We **AFFIRM** the district court's judgment.