NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0423n.06

No. 24-5779

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Sep 16, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| JACKIE WILSON RILEY, | ) ) | |
| Defendant-Appellant. | ) ) ) | OPINION |

Before: CLAY, KETHLEDGE, and STRANCH, Circuit Judges.

CLAY, J., delivered the opinion of the court in which STRANCH, J., concurred. KETHLEDGE, J. (pp. 22–23), delivered a separate opinion concurring in part and dissenting in part.

**CLAY, Circuit Judge.** Jackie Riley appeals the district court's revocation of his supervised release and resulting sentence of 57 months' imprisonment for supervised release violations. In August 2023, while serving a term of supervised release for prior convictions, Riley became the subject of an investigation for sexual solicitation of a minor. Pursuant to that investigation, law enforcement conducted a warranted search of Riley's home and a rental vehicle parked in his driveway. During the search, officers recovered cocaine from the vehicle, and marijuana, a firearm, and ammunition from Riley's home. Riley was arrested and charged with solicitation of a minor and controlled substances offenses in Tennessee state court. Subsequently, the United States Probation Department petitioned the district court to revoke Riley's supervised release, alleging that Riley committed three supervised release violations: (1) commission of new

criminal offenses, specifically soliciting a minor, in violation of Tenn. Code Ann. § 39-13-528; (2) commission of new criminal offenses, specifically manufacturing, selling, and delivering cocaine and marijuana in violation of Tenn. Code Ann. § 39-17-417; and (3) owning, possessing, or having access to a firearm. After a hearing, the district court found that the government established all three violations by a preponderance of the evidence, adjudged Riley guilty of each violation and sentenced him accordingly. Riley now argues that the evidence presented at the hearing was insufficient to establish each violation. He additionally challenges the substantive reasonableness of his 57-month sentence. We conclude that the district court abused its discretion in finding that the government established the second alleged violation. Accordingly, we **REVERSE** the district court's judgment of guilt as to the second violation and **REMAND** Riley's case for resentencing based only on the first and third violations.

## I. BACKGROUND

### A. Alleged Violations of Supervised Release

In 2018, Jackie Riley pleaded guilty to conspiracy to distribute and possession with intent to distribute cocaine and heroin in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2, and possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924. The district court sentenced him to 54 months' imprisonment and five years of supervised release.

Riley began serving his term of supervised release on July 8, 2020. On August 11, 2023, the United States Probation Office ("Probation") petitioned the district court for a warrant, alleging that Riley committed three violations of his supervised release. Probation filed a superseding petition on November 29, 2023, providing additional information on the alleged violations.

As to the first violation ("Violation One"), the petition alleged that Riley violated the condition of his supervised release that prohibited him from committing another federal, state, or

local crime. The petition cited that Riley had been charged with and arrested for two Tennessee felony offenses in August 2023: Solicitation of a Minor-Especially Aggravated Sexual Exploitation of a Minor; and Solicitation of a Minor-Induce Sexual Activity by a Minor, both in violation of Tenn. Code Ann. § 39-13-528.

The second supervised release violation ("Violation Two") alleged was also based on Riley's commission of another federal, state, or local crime. As to Violation Two, the petition cited that Riley had been charged with and arrested for two additional Tennessee felony offenses: Manufacture, Sell, and Deliver of Schedule II-Cocaine; and Manufacture, Sell, and Deliver of Schedule VI-Marijuana, both in violation of Tenn. Code Ann § 39-17-417.

The third violation ("Violation Three") alleged that Riley violated the condition of his supervised release that prohibited his ownership, possession, or access to firearms, ammunition, destructive devices, or dangerous weapons.

**B. Supervised Release Revocation Hearing Testimony**

On August 19, 2024, the district court held a hearing to determine whether Riley committed the three violations cited in the warrant petition. The government's evidence as to all violations primarily consisted of testimony from David Brown, a special agent with the Department of Homeland Security ("DHS").

Brown started by testifying to the first violation: Riley's commission of felonies involving the solicitation of a minor. Brown assisted the Metropolitan Nashville Police Department ("MNPD") with the investigation into the solicitation charges against Riley. Based on this investigation, Brown testified that, for a period of several months in 2022, Riley initiated and maintained sexual communications with thirteen-year-old girl. Brown testified to an interview of the minor victim for which he was present. He also stated that the MNPD showed the minor a

3

photograph of Riley, and she initially made a positive identification, but later recanted. Brown was not present for the photo identification but learned of it through an MNPD report.

In the interview Brown attended, the minor told investigators that Riley approached her on her way to school. Riley asked for her phone number and if she wanted to skip school. After obtaining the minor's phone number, Riley exchanged sexually explicit communications with her via text messages and phone calls for several weeks in the Fall of 2022, until the minor cut off contact and reported Riley's conduct to a school resource officer.

Riley initially identified himself to the minor as "Jamal," or "Jay." He used the same alias to communicate with his 13-year-old victim in a 2001 statutory rape case. But the minor victim in 2022 told investigators that the caller ID on the phone number she was communicating with showed the name Jackie Riley. Through search warrants, investigators obtained the communications between the minor and Riley, and identified that the minor was communicating with the same phone number that Probation had on record for Riley. Riley had also used the phone number to call known contacts. Brown personally reviewed 200 text messages between Riley and the minor. The records of the messages showed that media files were also exchanged, but the application the minor was using to send text messages had a limited retention period for media files, so Brown was unable to review photos or videos exchanged.

However, the minor provided investigators with information about photos and videos she exchanged with Riley. She told investigators that Riley asked her to send photos of herself, and she sent a photo of herself in a bra in response. Riley further requested that the minor obtain photos of other children to send to him. And the minor stated that Riley sent her a video of him "playing with his private parts." Hr'g Tr., R. 140, Page ID #625–26. Based on this information, Riley was indicted in Tennessee state court for sexually soliciting a minor.

4

Pursuant to the investigation into Riley's solicitation of a minor, Brown and the Murfreesboro, Tennessee Police Department ("MPD") executed a search warrant on Riley's home on August 10, 2023. The search was aimed at recovering evidence of Riley's solicitation of minors, but officers found no such evidence. Instead, they recovered cocaine and marijuana, which formed the basis for Riley's arrest on the controlled substances offenses underlying Violation Two.

Brown testified to the execution of the warrant, for which he was present. During their search, officers located Riley in a bedroom closet. Riley was the sole occupant of the home when the search commenced, but his live-in girlfriend, Depreme Iraldo, came home to the residence before the search concluded.

Officers recovered a container of marijuana in the closet where Riley was hiding. They also recovered crack cocaine and/or powder cocaine from the center console of a rental vehicle parked in Riley's driveway. Officers also found baggies and a scale in the car. Brown "believe[d] [Riley] was using" the rental vehicle, but provided no testimony as to its make, model, or verified ownership. Hr'g Tr., R. 140, Page ID #630.

Brown testified that the cocaine appeared to be in a distributable quantity. He could not specifically identify the amount of marijuana recovered, and did not testify to the significance of the amount he observed. As a result of the discovery of the drugs, Riley was charged in Tennessee state court with two counts of possession of controlled substances with intent to manufacture, sell, or deliver.

Brown also testified to officers' recovery of a pistol and ammunition, which formed the basis for Violation Three. During the execution of the search warrant, officers forced open a safe in the closet where Riley was found. In the safe, they found a firearm, IDs belonging to Riley, Riley's birth certificate, a box of ammunition, and a battery. Brown testified that, per a database

5

check, the gun was confirmed to not be stolen.  But he was unable to provide further information on the firearm.

Riley's probation officer, Tracy Morton, testified to a visit she made to Riley's residence the day before the search, on August 9, 2023.  During the visit, Riley identified a Wagoneer with Colorado license plates as his rental vehicle.  Morton was unaware as to whether that vehicle was the same one in which Brown and the MPD found cocaine.  Morton requested to inspect Riley's home, but Riley refused and appeared agitated.  Riley communicated to Morton that he had told a previous probation officer that he was "willing to go back to prison" and that Morton was "not a factor in [him] going back to prison."  *Id.* at Page ID #653.  Morton left the home without conducting a search.

The defense called Riley's girlfriend, Depreme Iraldo, as a witness to contest the third violation, Riley's possession of the firearm.  Iraldo testified that she had been in a relationship with Riley for ten years.  They lived together in Iraldo's house.  Iraldo stated that the safe, and the Glock pistol locked within it, were hers, and that Riley did not have access to the weapon.  According to Iraldo, Riley was unaware that she bought and activated the safe where she kept her pistol—she brought the safe home late at night and set it up without Riley's knowledge.  Additionally, the safe was not readily visible because it had "a whole bunch of stuff on top of it."  *Id.* at Page ID #661.  Iraldo further stated that Riley was unaware that she kept the gun in the safe, though he was aware she had a gun.  Most of the time, she kept the firearm in her car, rather than in the house.

Iraldo testified that she placed personal items in the safe, including important personal documents pertaining to herself and her daughter.  She acknowledged, however, that officers found only Riley's identification documents in the safe.  Iraldo testified that she placed Riley's personal documents in the safe, including his insurance policies, a paper copy of his driver's license, and

6

his Social Security card. Riley did not have access to these documents, and Iraldo said that she would access them for Riley as needed. Iraldo testified that Riley was unaware of where she kept the documents.

Iraldo also testified to comments she made to officers on the day the search warrant was executed. She recalled telling officers that Riley "had promised [her] he would stop dealing drugs." *Id.* at Page ID #665–66. Iraldo explained that she made this statement because Riley had dealt drugs in the past, and she therefore assumed law enforcement was searching their home in relation to drug activity. But she had no actual knowledge that Riley was selling drugs, and she had not observed drugs in her home, save for the "small amount of marijuana" recovered. *Id.* at Page ID #669. Iraldo further testified that at the time of the search, Riley was renting a Wagoneer SUV. But she did not testify that the car was present during the search.

After the parties presented the testimony described above and gave closing arguments, the district court found that the government had established each of the three violations alleged in the warrant petition by a preponderance of the evidence. The court entered an order adjudging Riley guilty of each violation.

## C. Sentencing

The district court sentenced Riley immediately after rendering its judgment on the supervised release violations. We describe the particulars of Riley's sentencing below.

Riley's most serious violation, for the purpose of the Sentencing Guidelines, was Violation Two, the commission of controlled substance offenses. Probation classified Violation Two as a Grade A violation pursuant to U.S.S.G. § 7B1.1(a)(1), which dictates that conduct constituting a controlled substance offense punishable by a term of imprisonment of over one year is classified as a Grade A supervised release violation. Probation classified Violations One and Three as lesser

7

Grade B violations. Pursuant to U.S.S.G. § 7B1.1(b), the grade of a defendant's supervised release violations is determined by the violation having the most serious grade. Thus, Riley's Guidelines range was determined by Violation Two. At hearing, the court confirmed that Violation Two was a Grade A violation, and Riley's most serious violation for sentencing purposes. Riley's counsel did not object to this determination.

At the time of his initial sentencing, Riley was determined to have a criminal history category of VI. The court acknowledged the criminal history determination from Riley's initial sentencing, and Riley's counsel did not dispute the categorization. Based on the Grade A violation, Riley's criminal history category of VI, and the fact that Riley was on supervised release for a Class A felony, Probation identified Riley's Sentencing Guidelines range as 51 to 63 months' imprisonment in its petition for a warrant. The district court adopted this range as Riley's advisory Sentencing Guidelines range without objection from the parties. However, Riley's statutory maximum penalty was 60 months' imprisonment.

At the hearing, the government asked the court to impose the statutory maximum penalty of 60 months. The government cited the severity of Riley's alleged crimes and the fact that Riley owned a freight delivery business, enabling him to engage in further criminal activity. In response, Riley's counsel asked that the court consider "as low a sentence as possible," and that the court lower whatever sentence it imposed to credit that Riley was in state custody for three months on the pending felony charges that were the subject of the violations. Hr'g Tr., R. 140, Page ID #708, 711.

Riley addressed the court during sentencing and did not challenge that he broke the conditions of his supervised release. He denied soliciting a minor, but stated that he knew the victim's mother. He denied that the drugs found in the rental car and home belonged to him, and

denied renting or driving the rental car in his driveway. And he denied possessing or owning a firearm.

The court imposed a sentence of 57 months' imprisonment, after which Riley's supervised release would resume. The court based the sentence on a perceived need for further deterrence and protection of the public, given that Riley was back in court on some "serious violations," including drug trafficking, which was "at the center" of Riley's initial conviction. *Id.* at Page ID #721. Neither party objected to Riley's sentence.

## II. DISCUSSION

### A. Standard of Review

"We review a district court's decision to revoke supervised release for abuse of discretion." *United States v. Kontrol*, 554 F.3d 1089, 1091 (6th Cir. 2009). Under this standard, we review the district court's legal conclusions de novo and factual findings for clear error. *Id.* at 1091–92.

A district court may revoke a term of supervised release after a final hearing if it finds by a preponderance of the evidence that the defendant violated a condition of supervised release. 18 U.S.C. § 3583(e)(3); *United States v. Lowenstein*, 108 F.3d 80, 85 (6th Cir. 1997). "The preponderance standard requires a lesser quantum of proof and enables the trier of fact to make a determination of guilt that it could not make if the standard were that at trial, i.e., guilt beyond a reasonable doubt." *United States v. Thompson*, 314 F. App'x 797, 799 (6th Cir. 2008). "Still, the preponderance standard requires the government to offer evidence that proves the defendant more likely than not committed the offense in question." *United States v. Catching*, 786 F. App'x 535, 539 (6th Cir. 2019) (citing *United States v. Moses*, 289 F.3d 847, 852 (6th Cir. 2002)). "Revocation hearings are more flexible than a criminal trial, and courts may rely on any relevant evidence,

including hearsay that is proven to be reliable." *United States v. Lewis*, 790 F. App'x 702, 706 (6th Cir. 2019) (internal quotation marks omitted).

## B. Analysis

Riley argues that there was insufficient evidence for the district court to find that he violated his supervised release as to each of the three violations alleged. We first assess Riley's sufficiency arguments as to Violation Two, Riley's commission of controlled substance offenses. That is because this violation was Riley's most serious, earning a Grade A classification under U.S.S.G. § 7B1.1(a)(1) while Riley's other violations were classified as Grade B, *see* U.S.S.G. § 7B1.1(a)(2). "Supervised release violations are not cumulative," and "what matters is the level of the defendant's most serious violation." *United States v. Malone*, 846 F. App'x 355, 360 (6th Cir. 2021) (internal quotation marks omitted). Violation Two, and only Violation Two, determined Riley's Sentencing Guidelines range. If there was sufficient evidence to support this violation, it follows that any error the district court made as to the sufficiency of the evidence for Violations One and Three would be harmless. *See id.* at 362. However, we conclude that there was insufficient evidence to support Violation Two. We therefore reverse the district court's judgment of guilt as to Violation Two and remand Riley's case for resentencing.

### 1. Sufficiency of the Evidence as to Violation Two

As to Violation Two, the government's petition for a warrant identified that Riley violated his supervised release by committing another crime, specifically the violation of Tenn. Code Ann. § 39-17-417. The statute, in relevant part, prohibits "knowingly . . . possess[ing] a controlled substance with intent to manufacture, deliver or sell the controlled substance." Tenn. Code Ann. § 39-17-417(a)(4); *see also* Hr'g Tr., R. 140, Page ID #616 (the district court identifying the charge underlying Violation Two as the "manufacture, sale and delivery of cocaine"). Thus, to adjudge

Riley guilty and revoke Riley's supervised release based on Violation Two, the court had to find the government proved by a preponderance of the evidence that Riley (1) knowingly (2) possessed a controlled substance and (3) intended to sell, deliver, or manufacture the substance. *See State v. Transou*, 928 S.W.2d 949, 955 (Tenn. Crim. App. 1996).

The government failed to meet its burden in this case, even under the preponderance of the evidence standard. We start with the cocaine in the rental vehicle, which the government alleged Riley constructively possessed. In Tennessee, proof of possession sufficient to convict a defendant of a drug offense can be actual or constructive. *State v. Elliot,* 366 S.W.3d 139, 145 (Tenn. Crim. App. 2010). Riley did not have actual possession of the cocaine, because he did not have physical control over the cocaine at the time of the search—Riley did not have the cocaine on his person and he was not seen holding it. *See United States v. Bailey*, 553 F.3d 940, 944 (6th Cir. 2009). Therefore, we must decide whether the government presented sufficient evidence of constructive possession. "In order for a person to constructively possess a drug, that person must have the power and intention at a given time to exercise dominion and control over the drugs either directly or through others." *Elliot,* 366 S.W.3d at 145 (cleaned up). Tennessee's focus on dominion and control mirrors this Court's approach to constructive possession. Therefore, we look to cases from both Tennessee and this Court to analyze the issue. *See Catching*, 786 F. App'x at 540.

In cases where drugs are found in a vehicle, ownership of the automobile is insufficient, by itself, to establish possession. *State v. Shaw*, 37 S.W.3d 900, 903 n.3 (Tenn. 2001) (Disapproving of "the [Tennessee] Court of Criminal Appeals' reliance upon the defendant's ownership of the car" to establish constructive possession, because "[o]wnership alone does not indicate that one is in constructive possession of contraband inside a vehicle"); *see also Bailey*, 553 F.3d at 948 (6th Cir. 2009) ("Were we to hold that driving the car as its lone occupant sufficed

11

to establish constructive possession of a firearm found underneath the driver's seat, then we would thereby institute an untenable strict-liability regime for constructive possession").

Even in cases in which a driver is stopped with contraband in his car, sole occupancy of a vehicle is insufficient to establish constructive possession of the contraband inside, and the government must provide additional circumstantial evidence establishing a nexus between the defendant and the contraband. *See Bailey*, 553 F.3d at 944–48. So too where the premises in which contraband is found are co-owned, or dominion over the premises is nonexclusive. *See United States v. Crumpton*, 824 F.3d 593, 609 (6th Cir. 2016). In these situations, the government can establish a sufficient nexus between the defendant and the contraband through evidence of "other incriminating statements or circumstances tending to buttress" an inference of constructive possession. *See id.* When assessing a defendant's constructive possession in cases where a driver is alleged to possess the contraband in a vehicle stopped by law enforcement, we have considered several categories of evidence as supportive of a finding of constructive possession. This includes evidence of the defendant's evasiveness or furtive movements, the fact that the contraband was found in close proximity to the defendant, other occupants' comments disavowing possession of the contraband or attributing the contraband to the defendant, the defendant's comments indicating knowledge of the contraband, and the fact that the defendant both drove the car and had the car registered in his name. *See Bailey*, 553 F.3d at 948–49; *Catching*, 786 F. App'x at 541–42.

The evidence in this case fails to establish that Riley had sufficient dominion or control over the vehicle in which the cocaine was found to attribute the cocaine to him. At the violation hearing, the government relied extensively on Riley's rental of a Wagoneer with a Colorado license plate as the basis for his constructive possession of the drugs found inside an unidentified rental vehicle parked in front of his house on August 10, 2023. Certainly, the government provided

evidence that Riley rented *a* vehicle, but it did not provide sufficient evidence to show that Riley rented *the* vehicle in which the drugs were found. Morton and Iraldo testified that Riley was renting a Wagoneer, and Morton identified that the Wagoneer was in Riley and Iraldo's driveway the day before the search warrant was executed, on August 9, 2023. Neither of these witnesses testified that the Wagoneer was the vehicle in which the cocaine was found.

Brown testified as to the discovery of the cocaine. But, critically, Brown testified only that the cocaine was found in a rental vehicle parked in Riley's driveway, without identifying the make or model of the car or verifying Riley's rental. Thus, it is unclear whether the rental in Riley's driveway on August 10 was, in fact, the Wagoneer Riley was driving, or a different car altogether.

As to the car where the drugs were found, Brown's barebones testimony failed to provide information as to the origin of the rental, the length of the rental, or whether Riley was seen driving the vehicle (and, if so, whether he shared the vehicle with another person—like Iraldo, with whom he shared the driveway). Therefore, Riley's dominion and control over the vehicle and its contents was unproven. *Cf. Catching*, 786 F. App'x at 542 (declining to find constructive possession even where a defendant drove a rental car in which drugs were found).

Beyond the presence of the vehicle in the driveway, there are three pieces of evidence we consider: Riley's evasiveness as to Morton's request to search his home the day before the drugs were discovered; his attempt to evade law enforcement during the August 10, 2023, search of his home and vehicle; and Iraldo's comment that Riley had promised her he would stop dealing drugs. None of these pieces of evidence sufficiently link Riley to the drugs found in the unidentified car. Morton testified that Riley refused the search of his home; she did not testify that Riley refused a search of the car where the drugs were found.

13

Similarly, Riley's effort to evade law enforcement in his home provides little evidence that he had knowledge of the contraband in the vehicle. Riley had other reasons, besides his alleged possession of cocaine, to evade law enforcement or refuse a search of his home: Law enforcement found marijuana and firearms in the closet where he was hiding. *Cf. Bailey*, 553 F.3d at 946 (stating that a defendant's "attempt to evade arrest . . . prove[d] little" as to his constructive possession of a firearm found in his vehicle because he "might well have taken this action in an effort to evade detection of the two bags of crack cocaine found in his pants"). There is therefore an insufficient nexus between Riley's furtive conduct as to the search of his home and the cocaine discovered in the unidentified rental car.

Iraldo's spontaneous comment that Riley "had promised [her] he would stop dealing drugs," Hr'g Tr., R. 140, Page ID #665–66, also fails to establish a sufficient nexus between Riley and the cocaine. Iraldo's statement indicated her suspicion that law enforcement's search of her home was related to the possibility that Riley was dealing drugs. But this suspicion was, again, unspecific as to the cocaine found in the vehicle. Iraldo testified that she had no knowledge of Riley's possession of drugs, save for the "small amount" of marijuana we address below. *Id.* at Page ID #669–70. She simply assumed that the police were searching her home because Riley was dealing drugs, given that he had dealt drugs in the past. *Id.* at Page ID #665–66. Iraldo's statement contrasts with statements we have found to "provide the missing nexus" between a defendant and contraband, in which a witness "testifies that the defendant possessed the contraband in question," *Catching*, 786 F. App'x at 543, or a defendant's statement suggests knowledge of the contraband, *see Crumpton*, 824 F.3d at 609. We therefore conclude that the government's evidence was legally insufficient to establish Riley's constructive possession of

cocaine, even under the preponderance of the evidence standard. The district court abused its discretion in concluding otherwise.

The marijuana found in Riley's home presents a different issue. The district court was within its discretion to conclude that Riley constructively possessed the marijuana. But the government presented insufficient evidence that Riley intended to sell or deliver the marijuana, a necessary element of the offense underlying Violation Two. Riley was found hiding from the police in a closet in his shared home; the closet contained the marijuana and a safe with Riley's personal documents. We have explained that "[w]hen the defendant is found in close proximity to [contraband] at the time of the arrest, the inference of dominion and control is particularly strong, and thus the incriminating evidence needed to corroborate the conviction is less." *Bailey*, 553 F.3d at 947 (internal quotation marks omitted). So too in this case. Proximity alone, however, does not establish Riley's constructive possession. There was undisputed evidence as to Riley's dominion and control over the closet where the drugs were found, chiefly that the closet was in his bedroom, which he shared with Iraldo. Again, we recognize that this "nonexclusive possession of the premises" where the marijuana was found "cannot establish [Riley's] constructive possession" of the marijuana. *Crumpton*, 824 F.3d at 609 (internal quotation marks omitted). But here, an inference as to Riley's constructive possession of the marijuana was "appropriate" because "other incriminating statements or circumstances" tended to buttress the inference that he constructively possessed the marijuana. *Id.* (internal quotation marks omitted). In relation to the marijuana, Riley's evasiveness as to the search of his home helps "tip the scale in favor of sufficiency" as to his constructive possession, because the marijuana, unlike the cocaine, was found in the home where Riley was evading police. *Bailey*, 553 F.3d at 947 (internal quotation marks omitted).

15

However, Riley's possession of marijuana does not establish his guilt of the offense with which he was charged, even for the purposes of the revocation proceedings. A necessary element of the underlying crime cited in the government's warrant petition is the defendant's specific intent to sell, deliver, or manufacture a controlled substance. *See Transou*, 928 S.W.2d at 955 (Tenn. Crim. App. 1996). As to the small amount of marijuana in Riley's possession, there was insufficient evidence of Riley's intention to sell, deliver, or manufacture. Pursuant to statute, courts in Tennessee may infer "from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." Tenn Code Ann. § 39-17-419. But this statute only "permits . . . an inference of intent to sell or deliver when the amount of the controlled substance and other relevant facts surrounding the arrest are considered *together*." *State v. Belew*, 348 S.W.3d 186, 191 (Tenn. Crim. App. 2005). In Riley's case, the record is devoid of evidence as to his intent to sell or deliver marijuana. The government's warrant petition indicates that 39 grams of marijuana were recovered from Riley's closet. No witness testified to the significance of this amount. *Cf. id.* at 192 (finding a lack of intent to sell or deliver cocaine where "no testimony was offered to explain the significance of the amount of cocaine, the packaging, the street value, or the amount typically used for personal consumption"). Instead, Brown testified that he did not have "any idea" as to the specific quantity of the marijuana recovered. Hr'g Tr., R. 140, Page ID #645. When asked whether the marijuana recovered "wasn't a huge amount," Brown neither confirmed nor denied the qualification, testifying only that this statement was "kind of subjective." *Id.* If anything, Brown indicated that the quantity of marijuana recovered was consistent with personal use, testifying that it was "not unusual for people to have

16

a decent-sized quantity of marijuana that might be for their own use." *Id.* This testimony clearly fails to establish Riley's intent to deliver or sell marijuana.

No other witness provided evidence of Riley's intent to sell or deliver. Iraldo's stray comment does not establish such intent. Her testimony suggesting that she was aware of the marijuana, but not that Riley was trafficking drugs, also tends to support the inference that the amount of marijuana Riley possessed was consistent with personal use. We acknowledge that items supporting an inference of drug trafficking—baggies and a scale—were located in the unidentified rental vehicle, but we find significant that these supplies were located together with the cocaine, not the marijuana. Thus, the government failed to establish Riley's intent to sell or deliver as to the marijuana. Without evidence of intent, Riley's possession of marijuana was insufficient to establish his guilt of the offense underlying Violation Two. The district court therefore abused its discretion in sustaining the violation, and we reverse the district court's judgment of guilt as to Violation Two. Because Violation Two was Riley's sole Grade A violation and drove the district court's sentencing considerations, we remand the case for resentencing as to Riley's conviction for violation of supervised release. Because we remand for resentencing, we need not consider Riley's argument that his sentence of 57 months was substantively unreasonable.

On remand, the district court need not revisit its conclusions as to Violations One and Three. We hold that the government provided sufficient evidence as to Riley's guilt of those violations. We address the sufficiency of the evidence as to each.

## 2. Sufficiency of the Evidence as to Violation One

Like Violation Two, the government alleged in Violation One that Riley violated the conditions of his supervised release by committing a new crime. Violation One referred to Riley's charges for Solicitation of a Minor–Especially Aggravated Sexual Exploitation of a Minor, Solicitation of a Minor–Induce Sexual Activity by a Minor, both in violation of Tenn. Code Ann. § 39-13-528. The inducement of sexual activity offense occurs when a person (1) who is eighteen years of age or older (2) "by means of oral, written or electronic communication, electronic mail or internet services" (3) "intentionally" (4) "invite[s] or attempt[s] to induce" (5) "a person whom the person making the solicitation knows, or should know, is less than eighteen (18) years of age" (6) "to engage in conduct that, if completed, would constitute . . . [s]exual activity involving a minor, pursuant to Tenn. Ann. Code § 39-13-529." Tenn. Code Ann. § 39-13-528(a)(9). In relevant part, Tenn. Code Ann. § 39-13-529 provides that "it is unlawful" to "[d]isplay to a minor, or expose a minor to, any material containing simulated sexual activity that is patently offensive or sexual activity if the purpose of the display can reasonably be construed as being for the sexual arousal or gratification of the minor or the person displaying the material." *Id.* § 39-13-529(b)(2). "Material" is defined as any "pictorial representation," and "sexual activity" is defined to include masturbation. *Id.* § 39-13-529(d)(2)(B), (4)(B).

Brown's testimony at the revocation hearing provided sufficient evidence that Riley committed the inducement of sexual activity offense. Brown testified that Riley's minor victim stated that Riley sent her a video of him "playing with his private parts." Hr'g Tr., R. 140, Page ID #625–26. Brown further established that the explicit communications the minor received, more likely than not, came from Riley, because the text messages originated from a phone number associated with Riley and the minor stated that the name "Jackie Riley" appeared on caller ID.

18

Thus, the district court could permissibly conclude that Riley, using electronic communication, exposed the minor to a pictorial representation of sexual activity, as defined in the relevant statutes. Brown's testimony additionally established that Riley more likely than not knew, or should have known, that the minor in question was under eighteen. Riley communicated with the minor using an alias and a texting app that did not retain media files, suggesting his knowledge of the illegality of the contact. Brown also testified that Riley encountered the minor, who was thirteen years old, on her way to school. The minor reported that Riley asked if she wanted to skip school. This fact suggests that Riley knew the minor was under eighteen, as are most school-aged children. Even if Riley was actually unaware of the minor's age, Brown's testimony allowed the inference that a reasonable person in the same position would have known the minor was under eighteen, which is all the Tennessee statutes require.

Riley argues that Brown's testimony was insufficient to prove solicitation for several reasons. He insinuates that the government was required to provide "proof directly from the minor victim" of the solicitation offense, rather than recounting the minor's statements through Brown. Appellant's Br., 17–18. He also asserts that the government was required to provide the court with the sexually explicit messages Riley sent to the minor to sufficiently prove the offense. And he pokes holes in Brown's testimony, pointing specifically to Brown's admission that that he did not know for certain that Riley was sending the messages he reviewed, and that the victim retracted her identification of Riley.

Riley's arguments suggest that Brown's testimony may have raised reasonable doubt as to Riley commission of the solicitation crime. But as discussed above, the testimony was sufficient to establish that Riley more likely than not solicited a minor, satisfying the preponderance of the evidence standard under which courts review supervised release violations. The government was

not required to have the minor victim testify, nor directly introduce the text messages, in order to provide sufficient proof of Violation One. We have upheld revocations of supervised release where the district court has relied on the testimony of a single investigating officer to establish that the defendant committed a new crime. *See Lewis*, 790 F. App'x at 706. And district courts are permitted to rely on hearsay testimony in revoking supervised release. *Id.* The district court therefore did not abuse its discretion in relying on Brown's testimony to conclude that the government established Riley's guilt as to Violation One.

### 3. Sufficiency of the Evidence as to Violation Three

As to Violation Three, the government alleged that Riley violated the conditions of his supervised release by owning, possessing, or having access to a firearm and ammunition. This violation was premised on the discovery of the pistol and ammunition in the safe in the closet where Riley was hiding from police. We conclude that the government provided sufficient evidence of Riley's access to the pistol and ammunition in the safe. The safe was in the closet of Riley's bedroom, and contained only the firearm and Riley's personal documents. These circumstances support an inference that Riley, more likely than not, could open the safe and access the firearm. *Cf. United States v. Crump*, 65 F.4th 287, 296 (6th Cir. 2023) (stating that a defendant's presence in an apartment, coupled with the fact that his personal documents were in the apartment, constituted evidence that the defendant exercised dominion and control over the apartment).

Contrary evidence was introduced at the hearing. Iraldo testified that the pistol was hers, and that only she had knowledge of an access to the safe where it was hidden. Riley argues that Iraldo's testimony establishes that there was insufficient evidence for the district court to find he committed Violation Three. But this argument ignores that the district court discredited Iraldo's testimony as to Riley's knowledge of and access to the safe. Because the "credibility of witnesses

20

is in the province of the factfinder," we decline to review the district court's determination of Iraldo's credibility. *United States v. Webster*, 426 F. App'x 406, 411 (6th Cir. 2011) (internal quotation marks omitted). Discounting Iraldo's testimony, the government presented sufficient evidence that Riley had access to the firearm. Therefore, the district court did not abuse its discretion in holding that the government established Riley's guilt as to Violation Three.

### III. CONCLUSION

For the reasons set forth above, we **REVERSE** the judgment of the district court as to Violation Two and **REMAND** Riley's case for resentencing based on Violations One and Three.

KETHLEDGE, Circuit Judge, concurring in part and dissenting in part. I would affirm the district court's judgment in full. The two challenges to the offenses underlying Violation Two should both fail—one on the merits, the other for not having been made at all.

First, the district court was right to conclude on this record that Riley constructively possessed the cocaine. We review the district court's underlying factual findings for clear error, and its legal conclusion de novo. *United States v. Kontrol*, 554 F.3d 1089, 1091-92 (6th Cir. 2009). If the district court's findings—including any "inferences from other facts"—are "plausible in light of the record viewed in its entirety," we must uphold them. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

At the revocation hearing, Special Agent Brown testified that cocaine, along with baggies and a scale, was found in the center console of a rental car outside the house; and that Riley—whom officers found hiding in a bedroom closet—was then the only person home. Riley's probation officer, Tracy Morton, testified that, the day before the search, Riley told her that a Jeep Wagoneer then parked in the driveway was his rental car. And Depreme Iraldo, Riley's girlfriend, likewise testified that Riley had been driving a rented Jeep Wagoneer; she further testified that when she returned to the house during the search, she volunteered to the police that Riley had "promised [her] he would stop dealing drugs." No evidence suggested that anyone else ever drove or otherwise used the Wagoneer. The district court therefore found that the rental car in which the drugs were discovered was Riley's Wagoneer and thus that he constructively possessed the drugs inside. *See* R. 140 at 84.

The district court's inference that the cars were the same was hardly implausible: Morton and Iraldo both testified that Riley was then driving a rental car, and Brown testified that Riley

22

was the only person home when the rental car outside was searched.  If we accept that finding—as we should—then Riley more likely than not constructively possessed the cocaine inside.

Second, Riley's brief fails to develop any argument challenging the district court's conclusion that he committed the marijuana offense.  I would not sua sponte reverse that conclusion here.  *See United States v. Webb*, 616 F.3d 605, 611 (6th Cir. 2010).

The majority concludes otherwise on both points, so I respectfully dissent.